ROBINSON *v.* HOLST & WEBER.

96　19
118　385

1. Where the owner of a ship who has chartered out the hold, retains control of the navigation of the vessel, and bills of lading for goods consigned therein, which themselves contain the contract of affreightment, are issued by the master at the instance of the charterer to consignors, the owner is bound directly to the consignors for the performance of the contract of affreightment as contained in the bills of lading, and the consignors are not affected by provisions of the charter-party inconsistent with such contract.

2. Where in such case the goods were consigned from Savannah to a port in Spain, under bills of lading reciting that the vessel was bound for that port, and the vessel went first, without necessity or reasonable cause, to a port in Italy not in the usual course of vessels bound from Savannah to the Spanish port, thus subjecting the goods, when delivered at that port, to an extra duty under the law of Spain, this was such a deviation as would authorize the consignors to recover in an action against the owner of the ship for loss thus occasioned.

3. The contract upon which this action was founded being unambiguous, and there being no conflict in the evidence as to its breach or the amount of damages thereby occasioned to the plaintiffs, there was no error in directing a verdict in their favor to the extent of that amount. It not appearing, however, that the defendant was stubbornly litigious or acted in bad faith, the recovery of attorney's fees was illegal; and accordingly direction is given that the amount of these fees be written off from the plaintiffs' recovery.

March 11, 1895. Argued at the last term.

Complaint for damages. Before Judge MacDONELL. City court of Savannah. November term, 1893.

CHARLES N. WEST, for plaintiff in error.

CHARLTON, MACKALL & ANDERSON, *contra.*

SIMMONS, Chief Justice.

On October 10th and 11th, 1892, the plaintiffs deliv-

ered to the steamer "Vulcan," then lying at the port of
Savannah, Georgia, 800 bales of cotton, under a con-
tract of affreightment contained in bills of lading signed
by the master of the vessel, which stated that the vessel
was bound for the port of Barcelona, Spain, and that
the cotton was to be delivered at that port. The bills
of lading contained provisions that in the event of the
steamer being full of cargo or putting back to Savannah
or in any port, or otherwise being prevented from pro-
ceeding in the ordinary course of the voyage, the goods
might be transhipped by any other steamer; and that
the ship was at liberty to call at any port for coals, but
in the United States not north of Newport News. There
was no other provision for deviation, save from the act of
God, accident and the like. The vessel did not sail direct
to Barcelona, but went first to Genoa, Italy. By reason
of its having gone first to Genoa, the consignee, in or-
der to get possession of the cotton on its arrival at Bar-
celona, was compelled to pay an extra import duty, there
being a law of Spain which imposed an extra duty on
cotton brought into that country which did not come
direct from the country where produced. The plaintiffs,
having been required to reimburse the consignee for the
expense incurred on this account, sued out an attach-
ment which was levied upon the vessel, and filed their
petition against the owner in the city court of Savannah,
setting out these facts and praying for the recovery of
the amount so paid by them, together with attorney's
fees. Upon the trial of the case, the jury, under the
direction of the court, found for the plaintiffs the sum
sued for, and the defendant made a motion for a new
trial, which was overruled, and he excepted.

1. At the trial the defendant offered to prove that at
the time the shipment was made the vessel was in port
under a charter-party between its owner and A. Minis
& Sons, of Savannah, which provided that she should

proceed direct from that port, when loaded, to Liverpool, Bremen, Genoa and Barcelona, one port only as might be ordered in signing bills of lading; and should have liberty "to call at any ports in any order." The plaintiffs objected to the introduction of this evidence, upon the ground that it was irrelevant, being between other parties than the owner of the vessel and the plaintiffs, to whom the bills of lading had been delivered; and because the plaintiffs had no notice of and had not assented to the terms of the charter-party. The objections were sustained and the charter-party excluded; and to this ruling the defendant excepted. The court did not err in excluding the charter-party. It is well settled that where a ship-owner who has chartered out the hold of his ship retains control of its navigation, as the owner did in this instance, and bills of lading in the ordinary form for goods actually consigned in the vessel, and containing the contract of affreightment, are issued by the master to shippers who have no notice of a charter-party, such bills of lading are binding upon the owner, notwithstanding provisions in the charter-party inconsistent therewith. In this case the bills of lading were silent as to the charter-party, and there was no evidence that the plaintiff knew of its existence at the time the shipment was made. Moreover, according to the weight of authority, the bills of lading would govern whether the shippers had notice of the charter-party or not. In Carver's Carriage by Sea, a leading authority on this subject, it is said: "The ship-owner is generally bound by the bill of lading contracts which the master has made, and he cannot, as against strangers to the charter who have shipped goods, or have become consignees or indorsees of the bills of lading for value, claim to set up rights under the charter-party which are inconsistent with the terms of those bills of lading, although notice of the existence of a charter-party be

given by the bills of lading themselves." (§156; see also §157.) "When the bills of lading are in the hands of strangers to the charter-party, either as original shippers or as indorsees to whom the property has passed, they show the contract under which the goods are being carried; and the ship-owner's claims, exemptions, and liens on the cargo, given by the charter-party, are not preserved as against such shippers or indorsees, except so far as those terms of the charter-party are expressly incorporated in the bill of lading." (Id. §160.) See Fry *v.* Chartered Mercantile Bank, L. R., 1 C. P. 689; Smith *v.* Sieveking, 24 L. J., Q. B. 257, affirmed in 5 E. & B. 589; Schooner Freeman *v.* Buckingham, 18 Howard, 182; *In re* Carlotta, 9 Benedict, 1, s. c. 5 Fed. Cas. 76; *In re* Coventina, 52 Fed. Rep. 156; *In re* Albert Dumois, 54 Fed. Rep. 529; *In re* Alert, 61 Fed. Rep. 113.

2. When a bill of lading provides that the goods are to be carried from one port to another, *prima facie* a direct voyage is intended, and if the vessel goes first without necessity or reasonable cause into a port which does not belong to the natural or established course of the voyage, this is such a deviation as will authorize the consignor to recover in an action against the owner of the ship for loss thus occasioned. See Abbott's Law of Merchant Shipping (13th ed.), p. 406 and cases cited; 2 Parsons' Maritime Law, p. 284; American and Eng. Enc. of Law, "Deviation," p. 658; Leduc *v.* Ward, 20 Q. B. Div. 475, 481 (1888). No reason was given in this case why the master sailed past the port of Barcelona and first entered the port of Genoa, except that the charter-party permitted him to do this, and that the vessel contained cotton consigned to Genoa, which was stowed above the cotton intended for Barcelona, and the cargo could therefore be more conveniently unloaded by going to Genoa first. Under the authorities above

referred to, these reasons were clearly insufficient, and the court did not err in ruling out the testimony of the master on this point.

3. The contract upon which the action was founded being unambiguous, and there being no conflict in the evidence as to its breach or the amount of the damages thereby occasioned to the plaintiffs, there was no error in directing a verdict to the extent of that amount. It does not appear, however, that the defendant was stubbornly litigious or acted in bad faith, and the recovery of attorneys' fees was therefore illegal. We accordingly affirm the judgment, with direction that the amount of the attorneys' fees included in the plaintiffs' recovery be written off.          *Judgment affirmed, with direction.*