## TRADERS INSURANCE COMPANY *v.* MANN, trustee.

|118　381|
|122　14|
|122　411|
|123　75|
|123　810|

1. A suit on a policy of insurance must be brought in the name of the holder of the legal title.

2. Where, after a fire, a debtor transfers such a policy to a creditor for the purpose of making a preference, and is thereafter adjudicated a bankrupt, and the creditor, in order to share in the general estate, surrenders the policy to the trustee without reassigning the same to him in writing, the latter holds the beneficial interest in the policy, and can by amendment substitute the holder of the legal title as plaintiff suing for his use.

3. That the adjudication in bankruptcy was based on the fact of such preference having been made did not of itself authorize the trustee to ignore the assignment; but it would have been necessary to have the same set aside, or secure a reassignment in writing before he could sue on the policy in his own name.

4. The fact that the creditor physically surrendered the policy without proper transfer in writing was not necessarily an admission that his title was void. It may have been to his interest to surrender the collateral, even if legally held, and prove his claim as an unsecured debt.

5. Under the bankrupt act, a trustee in bankruptcy may institute suit in the State court for the collection of debts without first obtaining an order so to do from the court of his appointment.

6. The constitutional right to be heard in the courts is granted defendants as well as plaintiffs; and a defendant will not be charged with expenses of litigation except in cases where he has acted in bad faith. •

7. This refers to "bad faith" in the transaction out of which the cause of action arose, rather than to the motive with which the defense is being made.

Argued May 4, — Decided August 12, 1903.

Action on insurance policy. Before Judge Nottingham. City court of Macon. March 8, 1902.

*Hardeman, Davis, Turner & Jones* and *Smith, Hammond & Smith*, for plaintiff in error.

*Erwin & Callaway* and *Marion W. Harris*, contra.

LAMAR, J. This was a suit by a trustee in bankruptcy on a policy of fire-insurance which had been previously transferred by Screws, the debtor, to Everett, Ridley, Ragan & Company, one of his creditors, and by them surrendered to the trustee, under the provisions of the bankrupt act, § 57 g, with a view of having their debt proved as an unsecured claim. The insurance company demurred on the ground that from the allegations it appeared that the legal title was in Everett, Ridley, Ragan & Company, and would there remain until it was reassigned in writing; that a physical surrender of a chose in action would not put title in the trustee so as to authorize a suit

in his own name. By amendment the trustee set out that the transfer of the policy had been the very act of bankruptcy for which Screws, the debtor, had been adjudicated a bankrupt, that Everett, Ridley, Ragan & Company had physically surrendered the policy, abandoning all claim thereunder, and proved their claim in the bankrupt court as an unsecured creditor. They were thereupon substituted by amendment as plaintiffs suing for the use of the trustee. The insurance company again demurred on the ground that there was no cause of action in the trustee or in Everett, Ridley, Ragan & Company; that if the transfer by Screws to them had been in violation of the bankrupt act, and the very reason for his being adjudicated a bankrupt, the transfer was absolutely void; that the transferees got no title and could not maintain a suit in their own name or for the use of the trustee. In effect the company claimed that while, under the facts alleged in the amendment, the trustee could have continued the suit in his own name, yet, by substituting as plaintiffs those who claimed under a void transfer, he had amended himself out of court.

The original petition, failing to allege that the policy had been reassigned in writing, did show that the trustee could not sue in his own name. The amended petition, however, does not sustain the proposition that Everett, Ridley, Ragan & Company were not holders of the legal title. The adjudication in bankruptcy was not binding on them. As a judgment in rem it conclusively fixed the status of Screws as a bankrupt, but Everett, Ridley, Ragan & Company had still a right to be heard on the validity of the transfer. They might have been able to show that it was not made within four months before the filing of the petition in bankruptcy, or that they had acted in good faith, without notice of insolvency, and purchased the policy for full value. Even if preferences are void under the bankrupt act, the trustee can not treat them as such for all purposes. He must first establish that fact in proceedings instituted to have them set aside. Neither was the fact that the holders abandoned and surrendered the policy an admission that the original assignment was void. It may have been perfectly valid, and yet the condition of the estate may have been such as to make it to their interest to prove their claim as an unsecured debt. To do that they were required to surrender whatever collateral they already held. Having abandoned the policy and proved

their claim, the trustee was thereafter beneficially interested in the proceeds of the policy, but, as they had not reassigned it in writing, they could, as the holders of the bare legal title, sue for his use. The insurance company had an interest in the suit being properly brought, and by a party where a judgment would be to it an ample and final protection. Certainly for the suit to proceed in the name of the holders for the use of the trustee can in no way injuriously affect the defendant. The Civil Code, § 5105, permitted them to be substituted as plaintiffs suing for the use of the beneficial owner, and thereby implied that even though the original petition may have been brought by an improper party, there was enough to amend by.

The company contends, however, that even if the trustee could have instituted a proceeding which could be amended into a perfect cause of action, this could only be true in a case where the beneficial owner was in a position lawfully to begin the action, but that the attempted suit here was utterly nugatory, since the trustee could only commence a suit by virtue of an order from the bankrupt court; that in this respect he stands on the same footing as a receiver, who is only authorized to sue when directed so to do by the chancellor administering the estate. There is a marked difference between the two. The powers of a receiver are not fixed by law, but by the order of appointment. His duties vary in each case. In some instances they are active; he must operate a railroad, sell a stock of goods, manage a farm, or collect rents. He is often a mere stakeholder to preserve the property until final decree; he has no fixed duty or inherent power. Unless authorized so to do, he has no right to bring suit. Civil Code, §§ 4900, 4906. But the duties of a trustee in bankruptcy are fixed by statute. "They shall collect and reduce to money the property of estates for which they are trustees," — words as fully warranting him to sue as an administrator with the same power and duty. The fact that this is to be "under the direction of the court" no more requires a preliminary order to sue than it would necessitate a special order to authorize him to go in person and present a note and demand payment. The money when collected after suit or without suit, and the use to be made thereof, was to be "under the direction of the court." But, being bound to collect, he was not obliged to secure a special order to bring a suit necessary to col-

lect.    As to actions by or against the bankrupt, pending at the time of the adjudication, the act requires him to obtain instructions from the court before intervening.    But the express requirement that he must obtain an order in such instances, while being silent as to the necessity therefor in cases like this, is conclusive that special permission was not necessary where he had to sue in order to collect a debt due the estate.    The fact that the original bankrupt act required this action to be brought in a State court is his sufficient authority to begin this proceeding (23 b).

The plaintiff claimed attorney's fees under the Civil Code, § 3796, setting out no particular facts entitling him thereto, further than that "the refusal to pay was in bad faith, and for the purpose of hindering, delaying, annoying, and damaging petitioner." Attorney's fees under this section of the code have usually been asked for by the plaintiff in actions ex delicto, as will appear from the following cases:    For damages to person and property, *Mayor of Savannah v. Waldner*, 49 *Ga.* 316; damages to live stock, *Selma R. Co. v. Fleming*, 48 *Ga.* 514; for deceit, *Smith v. Dudley*, 69 *Ga.* 78; for wrongfully suing out bail-trover, *Farrar v. Brackett*, 86 *Ga.* 463, *Wall v. Johnson*, 88 *Ga.* 525; wrongful seizure of property, *Juchter v. Boehm*, 67 *Ga.* 535; loss of goods by carrier, *R. & D. R. Co. v. Spencer*, 86 *Ga.* 203; *Johnson v. East Tenn. R. Co.*, 90 *Ga.* 812; capricious refusal by hotel keeper to deliver either check or baggage, *Carhart v. Wainman*, 114 *Ga.* 632; false imprisonment, *Ocean S. Co. v. Williams*, 69 *Ga.* 251; maliciously dispossessing a tenant, *Slater v. Kimbrough*, 91 *Ga.* 217 (2), 222; injuries received while crossing a toll-bridge, *Tift v. Towns*, 63 *Ga.* 237. In *Selma R. Co. v. Fleming*, 48 *Ga.* 515, the first case construing this section, Judge McCay intimated that the right was limited to actions of tort, since he says that "damages for a *tort* may be increased by the expenses of litigation, if the defendant has shown himself stubbornly litigious."    And what was said in *Mosely v. Sanders*, 76 *Ga.* 293, is not an adjudication to the contrary, since the court did not have before it a case involving bad faith, but held that the sheriff was liable for expenses incurred as the result of his wrongful refusal to accept an affidavit of illegality, even though he acted in good faith.    In *Brunswick Co. v. Dart*, 93 *Ga.* 747, it is intimated that the section allowing attorney's fees was only applicable to suits for damages, since it was held

that one having the right to sue for damages could not recover such fees when he elected to proceed for specific performance. Elsewhere these fees are allowed where the facts warrant punitive or exemplary damages. Winstead v. Hulme, 32 Kan. 568; N. O. R. Co. v. Albritton, 38 Miss. 242. By the Supreme Court of Texas it was said that "in cases of civil injury, or breach of contract, *in which there is no element of fraud, wilful negligence, or malice, the measure of damages* is simple compensation for the actual loss sustained." Smith v. Sherwood, 2 Tex. 460.

There are, however, a few Georgia cases ex contractu in which attorney's fees were sued for, but this question was not made, the matter being disposed of on want of pleading or failure of evidence: *Guernsey* v. *Shellman*, 59 *Ga.* 797; *Robinson* y. *Holst*, 96 *Ga.* 19; *Allen* v. *Harris*, 113 *Ga.* 107. In *Walden* v. *W. U. Tel. Co.*, 105 *Ga.* 275, the action was for damages, and the attorney's fees were sued for not only on the ground that the defendant had acted in bad faith, but that it had also been stubbornly litigious; the court saying that the amendment was sufficiently broad to have authorized the proof necessary to establish a claim for damages of this character. The only instances in which such fees have been sustained are *Murphy* v. *Savannah*, 73 *Ga.* 263, where there was no bad faith, but the city failed to except; and *Chambers* v. *Harper*, 83 *Ga.* 382, where the court doubtingly allowed the verdict to stand, it appearing that the bad faith consisted in keeping both the horse and the money. If according to these rulings the right to recover expenses of litigation is not confined to actions sounding in tort, the same element of bad faith must appear in order to warrant their recovery in actions ex contractu. In one class of cases the defendant must act in bad faith in attaching, levying, or seizing the property or imprisoning or detaining the person of the plaintiff. In the other it must be because of fraud, deceit, breach of trust, wilful misappropriation of funds, or fraud in securing a contract, or property thereunder. For expenses of litigation are not allowed for bad faith in refusing to pay, but where he "has acted in bad faith" in the transaction and dealings out of which the cause of action arose. The language of section 3796 clearly points to bad faith prior to the institution of the action, rather than to the motive with which the particular suit is being defended — "*has* acted in bad faith," not "*is* acting." By § 2140, "bad faith

in refusing to pay" was expressly made a ground for recovering attorney's fees as part of the damages. But the very fact that it required a statute to authorize such recovery is strongly indicative that, without it, a plaintiff was not given such a right. "Refusal to pay," in bad faith, under Code § 2140, is not the legal equivalent of "having acted in bad faith" under Code § 3796; and it will be seen from the decisions cited that in not a single case has it ever been held or intimated that bad faith in refusing to pay was ground for such damages. The measure of damages in case of breach of contract is usually capable of exact computation, and the same result flows to the plaintiff whether the refusal was because of inability, unwillingness, or bad faith. Good faith in refusing to pay would not lessen, nor bad faith increase, the plaintiff's damages in an action ex contractu. Civil Code, § 3906.

The provisions of the Civil Code, § 5701, that "no person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both," is a privilege granted the defendant, as well as the plaintiff. And if the original contract was made in good faith, if there is an ordinary breach, if the cause of action itself is not colored or poisoned by bad faith on the part of the defendant, he will not be mulcted with additional damages because he refuses to pay. Some defendants fail to pay because they are not able, others because they are not willing, and many because they dispute the liability. The costs which are taxed against the losing party, and the interest allowed for the failure to pay promptly, are the only damages which the law imposes in such cases. There are some statutory damages imposed upon the defendant where his litigation is for delay only. See Civil Code, §§ 4623, 5594. But it has long been the policy of Georgia not to require the defendant to pay the expense of obtaining a judgment against himself. The "docket fee" given the attorney for the successful party by the old colonial act, and which is still allowed in many States, is no longer taxed as part of the costs. Even the contract provision in notes to pay attorney's fees in case they are collected by suit has been restricted by statute. Civil Code, § 3667; Acts of 1890–91, p. 221. Section 3796 was not intended to announce new law, but was a codification of that previously existing. We are unable to find any case in which it has been held, in a suit on a note, bond, account, contract, or in

any like the present, that the plaintiff could recover his attorney's fees. *German Ass'n* v. *Farley*, 102 *Ga.* 720; *Tift* v. *Towns*, 63 *Ga.* 242; Kelly *v.* Rogers, 21 Minn. 153; Flack *v.* Neill, 22 Tex. 253; Smith *v.* Sherwood, 2 Tex. 460; St. Peter's Church *v.* Beach, 26 Conn. 356; Marshall *v.* Betner, 17 Ala. 833; Finney *v.* Smith, 27 Am. Rep. 524.　　See also many cases cited in 15 Cent. Dig. 1818–1822.

The expenses of the plaintiff in traveling to Macon to confer with counsel were voluntary, and, if recoverable under any possible circumstances, stand on the same footing as expenses of litigation hereinbefore dealt with.　　But as the record does not require a discussion of the meaning of the phrases, " stubbornly litigious" and " has caused the plaintiff unnecessary trouble and expense," we confine our ruling to a discussion of the words, " has acted in bad faith." See, in this connection, *Mosely* v. *Sanders*, 76 *Ga.* 294 (3) ; *Sav. R. Co.* v. *Pritchard*, 77 *Ga.* 412 (2 a).

*Judgment affirmed in part, and reversed in part.　By five Justices.*