## READ v. GOULD.

1. When this case was formerly before the Supreme Court, it was held that the petition was not subject to general demurrer, and that, under the facts therein alleged, the plaintiff was entitled to recover, unless other facts not appearing on the face of the petition, affecting or destroying the validity or binding effect of the agreement signed by the defendant, should appear upon the trial. *Read* v. *Gould*, 134 *Ga.* 524 (68 S. E. 94).

2. If parol negotiations were had for the sale of land at a certain price per acre, but when the parties met for the purpose of closing the transaction the vendee agreed that the vendor should have rights of pasturage, hunting, and fishing on the land, and thereupon a fee-simple deed was executed by the vendor to the vendee, and simultaneously therewith, as part of the same transaction, the latter executed to the former a written contract, reciting that in consideration of the sale of the land the vendor should have such rights during her life, but that, if the vendee should at any time choose to do so, he should have the right to terminate such agreement upon the payment to the vendor of $400 in addition to the purchase-price of the land,—as between the contracting parties the two instruments should be considered together as constituting one contract, and the agreement given by the vendee to the vendor would not be invalid as a nudum pactum because no consideration was paid to him therefor beyond the conveyance of the land.

3. After the execution of the deed and contract mentioned in the preceding headnote, the grantee in the deed first sold and conveyed the timber on the land to one party and then executed a fee-simple warranty deed to another for the land, in which latter deed was contained a recital of the previous sale of the timber and timber privileges, and their exception from the deed then being made. It then proceeded: "Nevertheless the said [party making the deed], for himself, his heirs and assigns, reserved and does hereby convey to the said [grantee in the deed being made] the right to pasture live stock on said land, the right to cut small timber sufficient for fence-posts to be used on said land, and the right to shoot or trap game and fish upon said lands or otherwise lawfully capture the game." *Held*, that such deed was not ambiguous, but clearly conveyed the right of pasturage and of hunting and fishing.

(*a*) Parol evidence was not admissible to show that the maker of such deed did not mean to transfer those rights, but to reserve them to the maker of the deed.

(*b*) Even if the deed were ambiguous, it would not be competent for the maker thereof to explain it by testifying to what was his undisclosed intent.

4. If a grantee of land entered into a binding written contract with the grantor that the latter should have the right of pasturage, hunting, and fishing on the land during her life, but that if the grantee should at any time choose so to do he should have the right to terminate this agreement upon the payment to the grantor of an additional sum of

$400; and if thereafter the grantee executed a fee-simple warranty deed conveying to another the land, together with the rights of pasturage, hunting, and fishing, the grantor had the right to treat this as an election to terminate the contract giving her such rights, and to bring suit for the $400; and it would not be a defense to such a suit to prove that the original grantee received no valuable consideration for making such warranty deed.

(a) Apparently the husband of such second grantee furnished a sufficient consideration to have a deed made to himself, but directed the deed to be made to his wife. If so, the consideration furnished by him would support the conveyance to his wife, as if a conveyance had been made to him and by him to his wife, even if the question of a consideration for such deed would affect the right of the original grantor, under her contract with her grantee, to recover the $400 therein mentioned.

5. If, about two years after the original grantee had made the conveyance of the land and rights of pasturage, hunting, and fishing, and after his grantor had elected to claim the $400 provided in the contract, such original grantor executed, to one desiring to buy the land from the person to whom it had been conveyed by the grantee, an instrument disclaiming any such rights in the land, but reserving the rights of the original grantor as against the original grantee upon his contract, this did not operate to destroy the right of action, or avail as a defense thereto.

FEBRUARY 26, 1913.

Complaint. Before Judge Felton. Bibb superior court. December 18, 1911.

Mrs. Mary J. Read brought suit against E. W. Gould, alleging substantially as follows: On June 6, 1904, plaintiff sold to defendant the land included in four land lots. As part of the consideration of the sale, Gould executed to her on the same day an instrument containing the following: "This agreement, made this day between E. W. Gould and Mary J. Read, witnesseth: That in consideration of the sale of certain land, to wit: lots 189, 190, 195 and 196, in the 28th land district of Twiggs County, it is agreed that said Mary J. Read shall have the right to pasturage upon said land during her life, not exceeding twenty head of cattle and sixty head of hogs. If, however, said E. W. Gould, his heirs and assigns, shall at any time choose to do so, he shall have the right to terminate this agreement upon the payment to said Mary J. Read the sum of $400 in addition to the purchase-price of said land, and also unto the family of the said Mary J. Read the privilege of hunting and fishing upon said lands during her life." On February 4, 1908, the defendant sold the land, and in his deed expressly conveyed the rights of pasturage and hunting thereon,

and the plaintiff was thereafter unable to exercise the rights reserved and granted to her by the agreement above set out. This amounted to an election by Gould to terminate the rights of the plaintiff, and the $400 stipulated to be paid to her in that event became due. Gould refused to pay that sum, and judgment therefor is prayed.

The defendant admitted the making of the deed by the plaintiff to him. He denied her allegations in regard to the execution of the written agreement. He admitted that, after the deed to him was signed, he gave a writing to the plaintiff, granting to her limited privileges of pasturage and hunting. He admitted making a deed to one Mrs. Phillips to the land on February 4, 1908, but alleged that she paid nothing therefor, and that it was done by the request of her husband, and was in effect a gift by the husband to her. He denied that he conveyed away the rights of pasturage and hunting, or that he did anything to interfere therewith. He alleged that when he obtained the deed from the plaintiff she understood that the conveyance of the title to the land was for the benefit of her brother; that the conveyance made by the defendant in 1908 was to the wife of the plaintiff's brother at the request of the latter; that the brother had full knowledge of the rights of the plaintiff, and his wife therefore took subject thereto. He further pleaded, that, since the making of the deed by him to the sister-in-law of the plaintiff, the plaintiff had renounced all the rights and privileges she had in the land in favor of her sister-in-law, and thereby satisfied and extinguished any and all rights and privileges which she now claims.

On the trial the evidence for the plaintiff was to the effect that in selling the land the price was reduced $400 because of the rights of pasturage being retained; and that Gould signed the contract which formed the basis of the suit, at the same time that the deed was executed. In reference to the release or disclaimer which she signed when the grantee of the defendant sold the land, the plaintiff testified that she received no consideration for it. This paper was not made directly between the plaintiff and the grantee of the defendant, but was made by the plaintiff to a proposed purchaser from the defendant's grantee. It recited the making of the contract between the plaintiff and the defendant, that the grantee of the latter had bought the land in ignorance thereof, and, being an

innocent purchaser, desired to convey it to another person, and that the plaintiff agreed that such purchaser should take the land free from the rights of pasturage or hunting, but that it was distinctly understood that the plaintiff, in executing such a paper, did not intend in any way to release her claim against the defendant.

The evidence for the defendant tended to show, among other things, the following: Defendant was buying standing timber and reconveying it to one Savage. Phillips was working with him in that connection. In regard to the purchase of the land in controversy, Phillips proposed that they take a deed to the land in his name or that of the defendant, saying that he could buy the land for $2 per acre, that Savage would give them $2 per acre for the timber, and that they would allow him to have the land if defendant would not charge Phillips any commission, and would allow the latter, to make "a hog farm" on the land, to which defendant assented. Defendant testified, that, during all the negotiations, he had no recollection of any right of pasturage or hunting on the part of Mrs. Read being mentioned until the time when the deed was being made to him; that Phillips, her brother-in-law, said that she had been in the habit of pasturing a few animals which she had, and that he thought it was not anything more than right and just for her to continue to do so, only he would limit the number of such animals; that Phillips dictated a contract; that defendant said it was immaterial to him, and signed it. As to the time when it was signed he said: "I think Mrs. Read was present at the time, receiving her money." In answer to the question, "It was all signed at the same time?" (referring to the deed and contract), he answered, "I think that closed the whole transaction. Mrs. Read came in from Read's Station, and the transaction for the land was made before that was mentioned, or before she received her money. The two papers were signed the same afternoon. Whether this was a future consideration, Phillips wanted to reserve that right of his sister to pasture that many cattle, and the only reason he put that, evidently, in it, as I understand it—I got $2 an acre for that timber. My recollection is that part of the money was paid that day and a part a little later on." Afterwards he conveyed the timber to Savage, and at the request of Phillips conveyed the land to the wife of the latter, who paid him nothing therefor. He denied that he received any consideration for executing the paper to the plaintiff.

The deed which the defendant executed to Mrs. Phillips on February 4, 1908, was a warranty deed, reciting a consideration of $1. It conveyed the land in controversy, and contained the following clauses: "All of the said lots are lands lying in the swamp adjacent to the Ocmulgee River, and no parts thereof have ever been cleared or cultivated, with no houses or no other improvements except certain parts of said lands now enclosed by wire fence. It is further understood and agreed that this deed does not convey any of the timber now standing and growing on said lots No. 189, No. 190, No. 195, and No. 196; said timber having been sold on or about the 1st day of Oct., 1904, to one H. W. Savage of the County of Duval, Fla., said timber rights and privileges to continue for the full term of 25 years from date of Oct. 1st, 1904, to terminate on the 1st day of Oct., 1929. This deed conveying the timber rights to the said H. W. Savage gives him the right of ingress, egress, and regress for cutting, felling, sawing, hauling, and handling said timber in any way and by any means as he or his heirs, executors, administrators, or assigns may deem best and proper. Nevertheless the said E. W. Gould, for himself and his heirs and assigns, reserved and does hereby convey to the said Ophelia R. Phillips the right to pasture live stock on said land, the right to cut small timber sufficient for fence-posts to be used on said land, and the right to shoot or trap game and fish upon said lands or otherwise lawfully capture the game." The defendant testified that by this instrument he intended to reserve the right of pasturage and of hunting and fishing.

The jury found for the defendant. The plaintiff moved for a new trial, which was refused, and she excepted.

*R. S. Wimberly* and *Mallary & Wimberly*, for plaintiff.

*L. D. Moore*, for defendant.

Beck, J. 1. This case was formerly before the Supreme Court. 134 *Ga.* 524. The trial court sustained a general demurrer to the petition, and this judgment was reversed. In the opinion it was said that the allegations were somewhat meager, and did not disclose distinctly whether the written agreement touching the right of pasturage, etc., was executed prior to the deed, and merged in it, or whether it was executed subsequently to the deed conveying the lands in fee simple, or simultaneously therewith; but that apparently the two apers were executed simultaneously, and were to

be construed as parts of one and the same transaction. It was said: "Considered as a whole, the defendant undertook to pay to the plaintiff the sum of $400 whenever he should 'terminate this agreement' relative to the rights and privileges of the petitioner as to pasturage and hunting upon said land; and when he sold the lands to a third person and expressly conveyed the rights of pasturage and hunting, generally and without limitation, he will not be heard to say that he has not brought about the contingency upon the happening of which the $400 was to become due to petitioner." It was further held that the plaintiff, by suing, elected to treat her rights and privileges of pasturage and hunting as terminated; and that the plaintiff was entitled to recover the $400, "unless other facts not appearing upon the face of the petition affecting or destroying the validity or the binding effect of the agreement signed by the defendant should appear upon the trial."

2. According to the defendant's own testimony, though a parol agreement had been made to sell him the land at $2 per acre, in closing up the transaction, taking the deed, and paying the money, it was stated that the grantor wished to reserve rights of pasturage and hunting, and that he agreed thereto, and executed the instrument on which this suit is based. He could not remember whether the paper or the deed was signed first, but it was evident from his own testimony that the whole matter constituted a single transaction, and that the papers were executed simultaneously, in the eye of the law. This being so, as between the parties thereto, the deed and the written agreement given by the grantee to the grantor, which stated on its face that it was given in consideration of the sale of the land, constituted one contract. The agreement by the grantee for the grantor to have certain privileges of pasturage, hunting, and fishing, reserved them to her as completely as if that agreement had been inserted in the deed itself, so far as the parties were concerned. A contract does not have to be contained in a single paper. Where it is contained in two papers, one a conveyance, and the other an agreement that the grantor shall retain certain rights of use, both papers being executed simultaneously as part of one transaction, and the agreement referring to the conveyance, as between the parties they will be construed together. So construed, the paper which was executed in this case by the defendant (the grantee) to the plaintiff (the grantor) was

based on a legal consideration. The agreement therein became one of the terms of the contract between the parties, and it could no more be repudiated by the defendant (the grantee), by declaring that he had received nothing in payment for the making of the paper, than if the deed itself had contained the reservation of the same rights to the plaintiff (the grantor). Had this provision been included in the deed, it would hardly be contended that the grantee could rid himself of it by being allowed to testify that such reservation was without consideration. *Harrison* v. *Tate,* 100 *Ga.* 383 (28 S. E. 227); *Wellmaker* v. *Wheatley,* 123 *Ga.* 201 (51 S. E. 436); *Baker* v. *Davis,* 127 *Ga.* 649 (7), 650 (57 S. E. 62); *Mc-Auliffe* v. *Vaughan,* 135 *Ga.* 852, 853 (70 S. E. 322, 33 L. R. A. (N. S.) 255, 22 Ann. Cas. 290); 9 Enc. Ev. 362, 364; 4 Id. 200; 9 Cyc. 580; 4 Wigmore on Evidence, § 2433; Pierce *v.* Tidwell, 81 Ala. 299 (2 So. 15); Carr *v.* Hays, 110 Ind. 408 (11 N. E. 25); Dillingham *v.* Estill, 33 Ky. 21. This does not conflict with the ruling in *Goette* v. *Sutton,* 128 *Ga.* 179 (57 S. E. 308). In that case it was not sought to destroy the force of a conveyance or an agreement by showing that there was no consideration for it; but, where it was deemed legitimate to inquire into the consideration of a deed which conveyed two pieces of land, and the consideration was stated in a gross sum, it was held that the amount applicable to each could be shown by parol. From what has been said above, it will appear that the presiding judge erred in admitting the evidence of the defendant that he received nothing in payment for the paper which he executed to the plaintiff, reserving to her the right of pasturage, etc. He also erred in submitting to the jury the question of whether the paper was a nudum pactum.

3. The deed from Gould, the defendant, to Mrs. Phillips conveyed the land and recited that the timber on the land had previously been conveyed to one Savage, with timber rights and privileges to continue for 25 years, and with rights of ingress, egress, etc., in connection therewith, and it was provided that the deed to Mrs. Phillips did not convey such timber. It then proceeded: "Nevertheless the said E. W. Gould, for himself and his heirs and assigns, reserved and does hereby convey to the said Ophelia R. Phillips the right to pasture live stock on said land, the right to cut small timber sufficient for fence-posts to be used on said land, and the right to shoot or trap game and fish upon said lands or

otherwise lawfully capture the game." It appeared that the description in the deed as originally drawn was typewritten, and that the words "reserved and" were interlined with pen and ink.

There is nothing ambiguous or doubtful about the meaning of these clauses in the deed. They recite that the timber and certain privileges had been conveyed to Savage; that Gould had reserved certain rights which he "does hereby convey" to Mrs. Phillips. To admit parol evidence to show that this did not mean to convey such rights to Mrs. Phillips, but to reserve them against her, would not be to construe the deed but to destroy one of its express terms. It was error to admit evidence to sustain such a construction, and also in the charge to submit that theory to the jury. Even were there an ambiguity in the clause above quoted, it could not be explained by admitting evidence of the defendant (the maker of the deed) as to his mere unexpressed intent.

4. According to the evidence of the defendant, he and Phillips entered into an agreement, before the purchase of the land, to the effect that they should purchase title to the land at $2 per acre, sell the timber to Savage for the same amount, and deliver the land to Phillips. The defendant also testified that Phillips negotiated with the owner of the land, the present plaintiff, and that the title was taken in the name of the defendant, because he preferred it. In referring to paying a part of the purchase-price for the land, which was not paid in cash, he said: "I think we gave her a due-bill for five or six hundred dollars. I can not remember the amount that was due. In fact we didn't have sufficient funds in hand, and we were wanting payment from Savage for sufficient money to pay her." It thus seems from the defendant's evidence that Phillips had an interest in the transaction, and that a conveyance to him would not have been without a consideration. If he saw fit to give his interest or right to his wife, and have a deed made to her, instead of to himself, the fact that she paid nothing to the defendant would not make the conveyance from him to her invalid as being a nudum pactum. But even had the conveyance from the defendant to Mrs. Phillips been without consideration, when the defendant conveyed the land to her, including the right of pasturage, etc., which he had reserved in conveying the timber to Savage, he could not defend against a suit by the plaintiff, based on his contract with her, by saying that he had conveyed the

rights covered by that contract, and thus elected to terminate it, but had done so without consideration. This is not an effort on his part to cancel that deed or to reform it. Neither is it a contest between the plaintiff, as the holder of the contract, and the grantee under the defendant. Perhaps the plaintiff might have claimed that Mrs. Phillips took with notice of the plaintiff's rights under her contract with the defendant, and might have sought to enforce such rights as against the title acquired by Mrs. Phillips. But she was not compelled to do so. When the defendant made a conveyance of the rights of pasturage, etc., which he had previously contracted should belong to the plaintiff, she was at liberty to treat this as a choice or election on his part to terminate those rights and pay $400, as provided in the contract. This was ruled when the case was formerly here. The evidence of the defendant showed that, very shortly after he made the deed to Mrs. Phillips, the plaintiff demanded the $400 under the contract.

It was error to admit evidence to the effect that Mrs. Phillips paid the defendant nothing for the land, and to charge the jury as to the relative merits of an unrecorded conveyance for value and a subsequent conveyance without valuable consideration.

5. Objection was also made by the plaintiff to the introduction by the defendant of the agreement by the plaintiff, made about two years after the conveyance by the defendant to Mrs. Phillips, in which the plaintiff recited that Mrs. Phillips had purchased from the defendant without notice of her rights and desired to convey to a third person, and that the plaintiff disclaimed any rights as against such third person. When the defendant conveyed away the rights of pasturage, hunting, and fishing, and the plaintiff elected to treat this as a termination of such rights under her contract with the defendant, and to demand of him the $400 provided by the contract to be paid upon the happening of such a contingency, she could not also claim that those rights were still existing. Her declaration that they were not so did not alter her position, but was in accordance with it. It was expressly stated, in the writing which she then gave, that she did not in any wise release her claim against the defendant. Such writing did not conflict with her claim against the defendant, or furnish any defense thereto; and it was error to admit it in evidence, over objection.

The motion for a new trial contains 32 grounds; but the foregoing discussion covers the substantial points raised. It would be of no service to take up each ground and discuss it separately.

*Judgment reversed. All the Justices concur.*