38253. EDWARDS-WARREN TIRE COMPANY, INC.
v. COBLE.

Decided June 23, 1960—Rehearing denied July 12, 1960.

108

110

*Slaton, Robertson, Brookins & Tidwell*, for plaintiff in error.
*Houston White, Beryl H. Weiner*, contra.

FRANKUM, Judge. ■ The plaintiff in error insists on the general demurrer, the special demurrers with reference to the expenses of litigation, and the special demurrers to the exhibits attached to the petition. As there is no general insistence on the other demurrers, the court will treat them as abandoned.

The defendant assigns error on the court's overruling of the general demurrer. It is the defendant's contention that the plaintiff could have obtained the amount sued for simply by endorsing the defendant's check and cashing it.

Under the contract the plaintiff was to be compensated for his services. This was obviously the consideration to the plaintiff to work. Upon his performance and at the appropriate time specified in the contract, the plaintiff was entitled to payment in legal tender. In *Heath v. Miller*, 205 Ga. 699 (54 S. E. 2d 432), it was held that under the provisions of *Code* § 20-1105, the only proper conditions attached to a valid tender are either a receipt in full or a surrender of the obligation, and such tender cannot be predicated on a condition unauthorized by law. The release attached in this case as a condition to be accepted prior to cashing the check was not only a receipt in full for the amount of the check, but also contained a release of all claims, including other claims than that under consideration. Accordingly the tender was invalid because it was conditioned on an improper demand. The

plaintiff did not refuse the check because it was not legal tender, but refused it because it required an improper condition precedent to receiving the proceeds of the check.

The argument of the defendant overlooks the fact that the petition prays for actual damages in the amount of $3,221.04, which was alleged to be the amount due the plaintiff for the performance of the contract. The failure of the defendant to pay the consideration was alleged to be the breach of the contract, and the amount owing was the actual damages. The trial court did not err in overruling the general demurrer.

■ The major question is whether or not the plaintiff has alleged sufficient facts to authorize expenses of litigation as provided in *Code* § 20-1404, as follows: "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

The legal principles governing the proper authorization of attorney's fees are discussed in *Traders Ins. Co. v. Mann*, 118 Ga. 381 (45 S. E. 426), but it must be remembered that in the *Mann* case no facts were alleged to show bad faith other than a simple refusal to pay and the court did not have before it the question of bad faith in carrying out the terms of an express contract.

In a decision expressly limited to the question of bad faith the court stated in the *Mann* case, supra, ". . . expenses of litigation are not allowed for bad faith in refusing to pay, but where he 'has acted in bad faith' in the transaction and dealings out of which the cause of action arose. The language of section 3796 [*Code* § 20-1404] clearly points to bad faith prior to the institution of the action, rather than to the motive with which the particular suit is being defended—'*has* acted in bad faith,' not '*is* acting.' . . . 'Refusal to pay' in bad faith, under Code § 2140, is not the legal equivalent of 'having acted in bad faith' under Code § 3796; and it will be seen from the decisions cited that in not a single case has it ever been held or intimated that bad faith in refusing to pay was ground for such damages. The measure of damages in case

of breach of contract is usually capable of exact computation, and the same result flows to the plaintiff whether the refusal was because of inability, unwillingness, or bad faith. Good faith in refusing to pay would not lessen, nor bad faith increase, the plaintiff's damages in an action ex contractu. Civil Code, § 3906.

"The provisions of the Civil Code, § 5701, that 'no person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both,' is a privilege granted the defendant, as well as the plaintiff. And if the original contract was made in good faith, if there is an ordinary breach, if the cause of action itself is not colored or poisoned by bad faith on the part of the defendant, he will not be mulcted with additional damages because he refuses to pay. Some defendants fail to pay because they are not able, others because they are not willing, and many because they dispute the liability. The costs which are taxed against the losing party, and the interest allowed for the failure to pay promptly, are the only damages which the law imposes in such cases. . ."

Where parties enter into a contract in good faith and there is a breach of the contract with no allegations or evidence to show bad faith, stubborn litigiousness, or unnecessary trouble and expense, the expenses of litigation will not be allowed. *McKenzie v. Mitchell*, 123 Ga. 72 (51 S. E. 34); *Traders Ins. Co. v. Mann*, 118 Ga. 381, supra; *Robinson v. Holst & Weber*, 96 Ga. 19 (3) (23 S. E. 76). Under some cases bad faith refers to fraud and deceit present when the parties entered into the contract. *Smith v. Williams*, 117 Ga. 782 (45 S. E. 394, 97 Am. St. Rep. 220); *Pone v. Barbre*, 57 Ga. App. 684 (196 S. E. 287). Bad faith is not implied by a mere refusal to pay a disputed claim. *State Mutual Ins. Co. v. McJenkin Ins. &c. Co.*, 86 Ga. App. 442 (2b) (71 S. E. 2d 670). Nor, ordinarily, will the simple refusal to pay a debt, which results in requiring a party to employ counsel and institute legal action, imply bad faith or authorize expenses of litigation (*Traders Ins. Co. v. Mann*, 118 Ga. 381, supra; *Pferdmenges, Preyer & Co. v. Butler, Stevens & Co.*, 117 Ga. 400, 43 S. E. 695), nor a refusal

to pay when there is an honest dispute. *Lovell v. Frankum*, 145 Ga. 106 (88 S. E. 569); *Murphy v. Morris*, 96 Ga. App. 513 (100 S. E. 2d 623).

A statement in *Stelling v. Richmond County*, 81 Ga. App. 571 (59 S. E. 2d 414), that bad faith in contemplation of *Code* § 20-1404, does not refer to bad faith in the breach of a contract, but refers to bad faith in the entering into the contract, or where it is procured by fraud or deceit, is disapproved in so far as it conflicts with this decision. As will be shown hereinafter, the authorities cited in the *Stelling* case where bad faith is an issue generally follow an interpretation of *Traders Ins. Co. v. Mann*, 118 Ga. 381, supra, which does not appear, i. e., that bad faith in a breach of a contract will not authorize expenses of litigation. This interpretation is perhaps a misconstruction of some of the language of the *Mann* case with reference to the manner in which the suit is defended. Thus, the actions of a defendant in defending a suit will not authorize attorney's fees. As pointed out in the *Mann* case, supra, "The language of section 3796 [*Code* § 20-1404] clearly points to bad faith *prior to the institution of the action* [italics ours], rather than to the motive with which the particular suit is being defended—'*has* acted in bad faith,' not '*is* acting.'"

In other words, the elements of bad faith which will authorize expenses of litigation in an ex contractu action are those acts relative to the conduct of entering into a contract or to the transaction and dealings out of which the cause of action arose (*Traders Ins. Co. v. Mann*, 118 Ga. 381, supra; *Sunbrand Supply Co. v. Garment &c. Corp.*, 99 Ga. App. 72, 107 S. E. 2d 680; *Glover v. Bankers Health &c. Ins. Co.*, 30 Ga. App. 308, 117 S. E. 665), but do not have reference to the motive with which the defendant defends an action after a cause of action has occurred. *Edwards v. Kellogg*, 121 Ga. 373 (49 S. E. 279).

A distinction seems to be that bad faith can occur at the inception of the contract (*Smith v. Williams*, 117 Ga. 782, supra; *Pone v. Barbre*, 57 Ga. App. 684, supra) or in carrying out the provisions or obligations of the contract (*Felder v. Paulk*, 165 Ga. 135, 139 S. E. 873; *Glover v. Bankers Health*

*&c. Ins. Co.,* 30 Ga. App. 308, supra). The latter rule is implicit in the application of the opinion of the *Felder* case, supra, which allowed expenses of litigation where the defendant appeared to have acted in bad faith in not carrying out certain provisions of a contract. The *Felder* and *Mann* cases are not in conflict as we interpret the rule announced in the *Mann* case. We construe "transactions and dealings out of which the cause of action arose" to mean not only the negotiation and formulation of the contract, but also included is the performance of the contractual provisions. Also, it must be remembered that there were no facts alleged in the *Mann* case to support an allegation of bad faith, other than the refusal to pay. That the mere refusal to pay, standing alone, will not constitute bad faith is the holding in the *Mann* case, and it does not undertake to say that bad faith in a breach after the inception of the contract will not authorize attorney's fees as some later cases have intimated.

The breach of the employment contract in the instant case is the transaction which gave rise to a cause of action. If the breach of the contract, which is the cause of action, is colored or poisoned by bad faith, expenses of litigation may be allowed. It is not a question of how the case is being defended; instead, it is how the contract was breached. Our holding is consistent with the ruling of *Traders Ins. Co. v. Mann,* 118 Ga. 381, supra. The elements of bad faith in the instant case occurred prior to the institution of the suit.

In *Glover v. Bankers Health &c. Ins. Co.,* 30 Ga. App. 308, supra, the court specifically found the cause of action to be for the *breach* of an entire contract which was the transaction and dealings out of which the cause of action arose. The court went on to properly award attorney's fees under *Code* § 20-1404.

With the conclusion that a breach of a contract accompanied by bad faith will authorize the jury to award attorney's fees, the court is faced with the question of whether or not the defendant's acts in the instant case constituted bad faith. In construing this Code section we find the courts in previous decisions, without defining bad faith, have found certain facts to constitute bad faith, while other facts do not. See *Bowman v. Poole,* 212 Ga. 261 (91 S. E. 2d 770); *B-X Corp. v. Jeter,*

210 Ga. 250 (78 S. E. 2d 790); *Williams v. Harris,* 207 Ga. 576 (63 S. E. 2d 386). Black's Law Dictionary defines "bad faith" as: "The opposite of 'good faith', generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."

*Traders Ins. Co. v. Mann,* 118 Ga. 381, 385, supra, states that the same element of bad faith must appear in an ex contractu action as would appear in a tort case to warrant their recovery. In a tort case, *Dodd v. Slater,* 101 Ga. App. 358 (114 S. E. 2d 167), the court defines bad faith as ". . . state of mind affirmatively operating with a furtive design or some motive of ill will."

The allegations of the petition show that the plaintiff had fully performed his contractual obligations, that the defendant was fully able to pay the consideration, and that the defendant admitted the obligation but capriciously refused payment unless the plaintiff would sign a release of any cause of action which the plaintiff might have against the defendant of any nature whatsoever. It is further alleged that the plaintiff was willing to give a release of any claims under the contract for which the payment represented, but refused to release all other rights that he might have. This allegation distinguishes the instant case from *Watson v. Williams,* 102 Ga. 852 (29 S. E. 476), where an employee refused to give a receipt for payment of his wages upon termination. It is alleged that the defendant admitted through its attorney that the corporation would pay the $3,221.04, but unless the petitioner gave the extensive release, the plaintiff would have to sue the corporation to obtain payment.

In applying the above principle of law to the instant case where a party willfully breaches a contract with an employee by refusing payment of the consideration when such employer admits the amount due and states that the amount will be paid upon suit being brought therefor against the defendant, and with the express ulterior or sinister motive not prompted by an honest mistake as to one's rights or duties, but for the purpose of coercing the employee to surrender all rights to any cause

of action or complaint of any nature whatsoever against the employer by requiring a full release from the employee before payment and thereby breaches such employment contract, such breach constitutes the transaction out of which the cause of action arose and is colored with bad faith which may authorize attorney's fees. See *Western & Atlantic R. Co. v. Smith*, 15 Ga. App. 289 (82 S. E. 906). It may well be that this litigation involves an honest dispute or simple breach without bad faith, but these are matters of defense which, upon proper proof, may negate the grounds for attorney's fees. These questions cannot be decided on demurrer, but must be determined on the trial of the case. The trial court did not err in overruling the demurrers directed to those allegations of the petition showing facts to authorize attorney's fees.

■ The petition contains as exhibits six letters, all of which constitute the correspondence relative to the plaintiff's refusal to cash the check with the attached release. The contents of the letters are not alleged in the paragraphs of the petition, and the exhibits are accordingly not repetitious. They are not argumentative, in that they only state the contents of the release of claims attached to the check as being the reason for rejecting the check in question.

We find no case except *Pace v. Cochran*, 144 Ga. 261 (86 S. E. 934), and *Martin v. Greer*, 31 Ga. App. 625 (121 S. E. 688), where it was held error to refuse to strike an exhibit from a petition as against the objection that the party was pleading his evidence. That ruling involved, in the *Pace* case, a photograph of the injured plaintiff taken long after the injuries complained of. It is well settled that photographs, X-rays, etc., are not proper matter for pleading, but letters usually are. In the present case it was necessary to set out the matter contained in the plaintiff's letters in order to show a wilful refusal and thus lay the foundation for that part of the cause of action relating to attorney's fees. We think it makes for neater pleading to do this by exhibit than to rephrase the contents of the letters by setting them out in substance in the allegations of the petition.

*Judgment affirmed. Gardner, P. J., Townsend and Carlisle, JJ., concur.*