Max L. KUNIANSKY, Appellant,

v.

**D. H. OVERMYER WAREHOUSE CO., Inc., Appellee.**

**D. H. OVERMYER WAREHOUSE CO., Inc., Appellant,**

v.

Max L. KUNIANSKY, Appellee.

No. 25948.

United States Court of Appeals
Fifth Circuit.

Dec. 20, 1968.

Rehearing En Banc Denied
Feb. 10, 1969.

William G. Grant, Sidney Parks, Grant, Spears & Duckworth, Atlanta, Ga., for Appellant.

Russell Morton Brown, Washington, D. C. Scott Charlton, Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., Brown, Goodpasture & Block, Washington, D. C., Edmund M. Connery, Gen. Counsel, New York City, for appellee and cross-appellant.

Before JOHN R. BROWN, Chief Judge, TUTTLE,* Circuit Judge, and FISHER, District Judge.

FISHER, District Judge:

This appeal challenges the district court's holding that the defendant Kuniansky as builder-contractor was liable for breach of contractual warranty re-

specting foundation construction for a warehouse built for the plaintiff Overmyer. Kuniansky alleges the trial court erred in finding a lease contract and a separate contemporaneously executed option-to-purchase to be a single complete agreement enabling Overmyer to rely on warranties in the lease after exercising the option; that conveyance of the deed from Kuniansky to Overmyer did not extinguish previous contractual warranties; and that the six year statute of limitations was not a bar to the action. Overmyer, as cross-appellant, contends the trial court erred in assessing and computing damages on a loss-of-value basis rather than on a cost-of-replacement basis, in not allowing $14,276 as further damages incurred in preventing collapse of the building, and in not allowing attorneys fees under Georgia Code, Sec. 20–1404. We affirm as to all points except that concerning computation of damages.

■ The trial court was eminently correct in finding that building specifications were not followed during construction. Briefly, the facts are that the terrain upon which the 120,000 square feet warehouse was to be constructed was a steep slope requiring an extensive fill on the back side. The plans called for this fill to be compacted to 95% under supervision and approval of a named engineer. The fill was neither compacted to 95% nor was the process supervised. Upon discovery that the fill was improperly compacted and unknown to Overmyer an alternative method was devised whereby pilings were sunk into the fill and a grade beam placed thereon to serve as a foundation support. This was completely ineffectual, however, in that the pilings were too short to penetrate the fill into the virgin soil below. Thus, the pilings began to gradually shift along with the improperly compacted fill causing the rear and side walls to crack and separate. These defects appeared incipiently after Overmyer took possession of the premises, but their full extent was not discovered until after the option was exer-

* Judge Tuttle did not participate in the consideration or determination of this appeal.

cised. Damage became extensive, and to the date of trial, Overmyer was forced to spend $14,276 in rebuilding and shoring up portions of the rear wall with exterior braces. None of such repairs have effectively cured the difficulty, however, but only delayed possible collapse.

The ultimate question of Kuniansky's liability hinged upon the trial court's determination of three questions relating to contract interpretation, merger of covenants, and limitations. First, Kuniansky argued that Overmyer as a *purchaser* rather than as lessee could not claim the benefit of Kuniansky's covenant to build according to specifications inasmuch as the option to purchase agreement did not contain such, nor did it expressly adopt the covenants or specifications in the lease agreement. Kuniansky curiously urged the court to conclude that the parties intended to agree that the warehouse would be warranted according to specifications for purposes of the lease but not for purposes of sale.

The trial court found that both agreements pertained to the construction, leasing and purchasing of a warehouse in accordance with Overmyer's needs, and consequently applied the Georgia rule that where multiple instruments pertaining to the same transaction and subject matter are executed contemporaneously, they will be taken as forming together one agreement. Read v. Gould, 139 Ga. 499, 77 S.E. 642 (1912). The trial court reasoned that by construing the instruments together the full intent of the parties could be perceived, and the whole contract should be considered in the construction of any part. The court further found that in executing separate agreements the parties did not contemplate separate warranties, but rather that separate agreements were typical in modern tax-oriented and capital-influenced transactions.

■ We hold the court's decision considering the instruments together to be correct. Moreover, we think there was ample evidence in the option agreement itself to warrant the court's conclusion that the parties intended the covenants of workmanship to be applicable.[1]

Secondly, Kuniansky argued that Overmyer could not rely on the construction covenants in that they merged into the deed from Kuniansky to Overmyer, and since there was no express warranty in the deed, they were extinguished by the transfer. Kuniansky cited the general Georgia rule that absent expressed intent to the contrary, covenants of an antecedent contract for purchase and sale of realty merge into a subsequent deed involving the same property. The court observed that covenants of workmanship ordinarily survive the subsequent deed. cf. Kollen v. High Point Forest, Inc., 104 Ga.App. 713, 123 S.E.2d 10 (1961). Further, the court held that furnishing the deed was simply one of several obligations of Kuniansky and was not inconsistent with the contract. Thus, there was intended no merger.

■■ Again the trial court seems to be on a sound basis. Covenants of workmanship are stipulations for which the conveyance of a deed can in no way be said to constitute performance thereof. We hold, therefore, the trial court was correct in concluding that construction rights under the contract were not extinguished by merger into the deed.

Finally, Kuniansky argued that regardless of whether the instruments were one agreement or whether the covenants merged into the deed, Overmyer could not recover because the claim was barred by the six year statute of limitations.[2]

This lawsuit was brought on March 10, 1965. The agreements were executed April 3, 1958. Overmyer began partial occupance with rent effective on one por-

---

1. One of the recitals in the option agreement was: "WHEREAS, Kuniansky and Overmyer have entered into a lease agreement, of even date herewith, whereby Kuniansky has agreed to erect a warehouse building on the above described real estate *in accordance with certain plans and specifications attached to and made a part of said lease agreement * * *"* (Emphasis Supplied).

2. Cf. Georgia Code, Sec. 3–705.

tion on October 15, 1958, and on another November 1, 1958. Overmyer wrote Kuniansky on March 27, 1959, formally accepting the lease for rental purposes, and exercised the option to purchase on September 30, 1959.

■ Under Georgia law, it is unnecessary that a party be aware of his cause of action or that he have actually suffered damage before the statute begins to run. Thus, the statute begins to run as soon as a complete cause of action occurs. Kuniansky represented that this condition occurred in the summer of 1958 during construction. That is, the cause of action arose as soon as the workmen departed from the plans and specifications. Overmyer, on the other hand, argued there could be no cause of action until the option was exercised. The court took neither position and held that the earliest date suit could have been brought was when the lease became effective. The court found this date to be March 27, 1959, the date Overmyer formally accepted the building for purposes of the lease, which was within 17 days of the expiration of six years from the date this action was brought. The court concluded that the lease contemplated a formal acceptance of the premises,[3] and that mere occupancy pending acceptance was insufficient to effect the lease.[4]

■ We lean toward the position taken by the appellee, Overmyer, that the statute did not begin to run until the op-

tion was exercised. However, we agree with the trial judge that in no event could the statute have begun to run before the lease went into effect. Further, we do not consider the court's finding March 27, 1959 the effective date for the lease clearly erroneous. We, therefore, hold that the trial court did not err in holding that limitations was no bar to this action.

On cross-appeal Overmyer attacks the trial Court's determination of damages alleging that the court applied the wrong theory in measuring damages, that the court's computation of damages was unsupported by the evidence, that the court should have allowed recovery for $14,276 spent in avoiding collapse of the rear wall, and that the court should have awarded attorneys fees.

■ Georgia does not normally allow attorneys fees in contractual matters.[5] Thus, attorneys fees are not recoverable unless it appears that such contract was entered into by the defendant in bad faith or procured by him through fraud or deceit.[6] We agree that bad faith, fraud, or deceit has not been shown and affirm the trial court's denial of attorneys fees.

■ In assessing damages for the defective workmanship, the trial court was confronted with two theories. Overmyer argued that the measure of damages should be the cost of restoration or repair.[7] This is the Georgia rule

---

3. Paragraph 30 of the lease provided in part: "*Lessee agrees to accept the premises* in their completed condition and as suited for the uses intended; provided, however, the same are completed in accordance with the plans and specifications hereto attached and made a part hereof." (Emphasis supplied).

4. The lease stated that it would be effective whenever the premises were "ready for occupancy". However, paragraph 27 defined "ready for occupancy" as including all of the following items:
(1) completion according to the plans and specifications,
(2) all utilities installed and in good working order, and

(3) premises available for lessee to move in.

5. Cf. Georgia Code, Sec. 20–1404.

6. Cf. McKenzie v. Mitchell, 123 Ga. 72, 51 S.E. 34 (1905); Schafer Baking Company v. Greenberg, 51 Ga.App. 324, 180 S.E. 499 (1935); Stelling v. Richmond County, 81 Ga.App. 571, 59 S.E.2d 414 (1950); Edwards-Warren Tire Company, Inc. v. Coble, 102 Ga.App. 106, 115 S.E. 2d 852 (1960).

7. The testimony indicated that the only way to repair the defects would be to seal off a back portion of the warehouse, tear down the old wall and completely

where bad faith is shown. Dornblatt v. Carlton, 10 Ga.App. 741, 73 S.E. 1085 (1912). However, the trial court, finding no bad faith, applied the rule that where the builder has acted in good faith the proper measure of damages is the difference in value of the building as delivered and the value it would have had if completed in accordance with the contract.[8] The trial judge concluded:

"This state rule is consistent with the general law which provides, in cases such as this, that 'the difference in the value of the property with the defective work, and what it would have been had there been strict compliance with the contract may be resorted to as the measure of damages where the contract has not been substantially performed, where the defects cannot be remedial (sic) without great sacrifice of work or material or would impair the building, or would involve unreasonable economic waste or where the defects cannot be repaired at a reasonable cost, or where it is not practicable to remedy the defects.' "

The trial judge further concluded that damages were to be assessed according to 1959 values.

Up to this point we completely agree with the able and well-considered opinion of the district judge. However, in actually computing damages the court inexplicably failed to apply the very standard which it had correctly announced to be appropriate in this case. Instead, the court found the largest possible area damaged was only 12,500 square feet. Further, if perfect, such construction would have been worth $3.60 per square foot in 1959 or a total of $45,000. The court found the value of the imperfectly

constructed 12,500 square feet to be $.50 per square foot or $6,250. The court then awarded $38,750 as damages representing the difference between the two sums.

We find no evidence to support the court's conclusion that the maximum area affected was 12,500 square feet or that the value of such as delivered was $.50 per square foot. To the contrary, all the evidence indicates that the entire building was damaged, and damage to the entire building was the appropriate consideration for the court. Moreover, there was testimony for the judge's deliberation as to the diminution in value of the entire building. We are therefore constrained to reverse on this issue and remand for an inquiry into the reduction in value of the entire building.

The judgment of the trial court is affirmed as to all points except the method of computing damages which we reverse and remand with the directions above.

Affirmed in part and reversed in part.

## ON PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and FISHER, District Judge.

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

85 Ga.App. 525, 69 S.E.2d 788 (1952); Spielberg v. McEntire, 105 Ga.App. 545, 125 S.E.2d 134 (1962).

---

rebuild both the foundation and the wall at a prohibitive cost of from $123,102 to $140,618.

8. Kendrick v. White, 75 Ga.App. 307, 43 S.E.2d 285 (1947); McKee v. Wheelus,