34275. WILSON, by next friend *v.* HARRELL,
Administrator, *et al.*

DECIDED MARCH 18, 1953.

*Randall Evans Jr., Will Ed Smith,* for plaintiff in error.
*W. S. Mann, A. Russell Ross, Hal M. Smith,* contra.

WORRILL, J. David Charles Wilson, a minor, by his next friend, Mrs. Maggie Moore, brought a suit in the City Court of Eastman against Jake D. Harrell, as the administrator of J. J. Cheek, and against Georgia Vitrified Brick & Clay Company, for the alleged wrongful homicide of his father, R. E. Wilson. The petition as amended alleged that the said R. E. Wilson was riding in a Buick automobile which was being driven by Cheek; and that the same collided with a truck owned by Georgia Vitrified Brick & Clay Company, which truck was at the time being operated by its agent and servant in the scope of its business. It was alleged, and the evidence showed that the collision occurred near McRae, Georgia, in Telfair County, when the automobile driven by Cheek in a southerly direction, and in which Wilson was riding as a passenger, passed over an overhead railroad bridge and entered a curve and descent to its right, while the truck of the defendant was being driven in a northerly direction up the said hill and around the curve to its left, and at a point after the automobile had passed over the said bridge and before the truck had reached the bridge. There was conflicting evidence as to the speed of the automobile, it being variously estimated at between 45 and 80 or 85 miles per hour, and there was likewise conflicting evidence as to whether the truck of the defendant company was entirely on its right side of the road. In his petition the plaintiff charged the defendant company with negligence in operating its truck on the left side of the road at the time of the collision. The negligence charged against Cheek was in operating his automobile at a speed that was greater than was reasonable and safe, having due regard for the traffic and road conditions then

existing, in operating at 65 or 70 miles per hour downgrade and around a curve and in such a manner that the automobile was out of control immediately before and at the time of the collision; in not reducing his speed on the bridge and descent; in not driving his automobile as near to the right hand side of the pavement as reasonably possible; and in not maintaining a proper lookout so as to have avoided striking the truck of the defendant, Georgia Vitrified Brick & Clay Company. The defendant company filed an answer denying liability and contending that the negligence of Cheek was the proximate cause of the collision and that the plaintiff's father, by the exercise of ordinary care, could have avoided the collision and the injuries he sustained. The defendant Harrell filed a plea that no assets of the estate of J. J. Cheek had come into his hands as administrator, and that he does not now have any money or control any property belonging to the said estate; and he further pleaded that, if the plaintiff was injured as a result of the negligence of Cheek, then he had encouraged, aided, and abetted Cheek in such negligence, had assumed the risk incident thereto, and can hold no one responsible therefor.

After the introduction of evidence and the charge to the jury, a verdict in favor of the defendants was returned. The plaintiff made a motion for a new trial on the general grounds and on 27 special grounds, which was overruled, and the exception here is to that judgment.

1. Special ground 1 of the motion for a new trial complains that the court, in instructing the jury that they should look to the pleadings of the parties, which would be out with them, to ascertain the contentions of the parties, used in one place, referring to the injury and death of the plaintiff's father or to the collision which caused the injury and death, the term, "this unfortunate affair," and in another place the term, "this accident or collision." It is contended that this language tended to minimize the gravity of the negligence of the defendants, and tended to impress the jury with the idea that there was a contention that the injury and death of the plaintiff's father was the result of an accident unmixed with the negligence of anybody.

This charge is not subject to that criticism. It is clear that

the use of the term "accident" was in the sense of injury or collision, and the jury undoubtedly so understood it. Exact legal preciseness of language by the trial judge in his instructions to the jury is not always attainable, however desirable such an end may be. While the use of the words "this unfortunate affair" and the word "accident" may not have been legally precise where there was no contention that the occurrence was an accident in the legal sense, nevertheless, it is not apparent that the jury could have misunderstood the true meaning and intention of the trial judge in his use of such words. This ground of the motion does not show error. See *Butler* v. *Central of Georgia Ry. Co.*, 41 *Ga. App.* 115 (4) (151 S. E. 834).

2. Special ground 2 complains of the following portion of the charge: "I charge you, gentlemen of the jury, an agent for hire shall be bound to exercise, about the business of his principal, that ordinary care, skill and diligence required of a bailee for hire. A voluntary agent, without hire or reward, shall be liable only for gross neglect. The principal shall be bound for the care, diligence and fidelity of his agent in his business, and hence he shall be bound for the neglect and fraud of his agent in the transaction of such business." This charge is alleged to have been erroneous and injurious and harmful to the plaintiff because the statement, that "A voluntary agent, without hire or reward, shall be liable only for gross neglect," was not applicable to the contentions made in the pleadings or by the evidence, and because the only agent involved and to whom such charge could have been applicable was the driver of the truck of Georgia Vitrified Brick & Clay Company; and such charge had the effect of leading the jury to believe that such company was liable only for gross negligence on the part of such agent, whereas it was conclusively shown that such agent was not a voluntary agent, or one without hire, but was an agent for hire, and this placed a greater burden on the plaintiff than he was required to carry because it was only required that ordinary negligence be proved against such agent.

While the giving of this charge may have been inapt and not entirely adjusted to the pleadings or the evidence, it was not reversible error. The evidence was clear that the driver of the truck belonging to Georgia Vitrified Brick & Clay Company was

an employee of that company, in other words that he was an agent for hire. There was no evidence whatsoever that he was a voluntary agent or one without hire, and the jury could not have been misled by this portion of the charge since, immediately preceding the specific portion complained of and in immediate connection therewith, the court told the jury that an agent for hire would be bound to exercise ordinary skill and diligence. While it may be conceded that the court did not specifically withdraw this portion of the instructions, and while it may be further conceded that the instruction was not strictly adjusted to the pleadings and the evidence, it is not likely that it had the harmful effect contended, and the trial court did not err in overruling this ground.

3. Special ground 5 of the motion for new trial complains that the court erred in giving the following instructions to the jury: "I charge you, gentlemen of the jury, that if Wilson knew or, in the exercise of ordinary care, should have known that his host Cheek, the driver of the automobile, was incompetent because of being under the influence of liquor, or was careless, or was driving at a reckless and dangerous rate of speed, it was the duty of Wilson to take such steps as an ordinarily prudent person would have taken under the same or similar circumstances for his own protection. If, after such incompetent, careless or reckless and dangerous driving, if it existed, became known to said Wilson, and, as contended by the defendant Georgia Vitrified Brick & Clay Company, said automobile was stopped and said Wilson had the opportunity to or did alight therefrom and thereafter voluntarily re-entered said automobile under such conditions and circumstances, you would be authorized to find that the said Wilson was not in the exercise of ordinary care, in which event, the plaintiff would not be authorized to recover." The principal criticism by the movant, of this charge, as shown by the motion for new trial, was that the charge that, if Wilson knew that his host Cheek was under the influence of intoxicants, or was careless or was driving in a reckless or dangerous manner, then it was Wilson's duty to take such steps as an ordinarily prudent person would take under the same or similar circumstances, etc., amounted to an instruction that, if the jury found that Cheek was merely careless, then

they would be authorized to find that Wilson should have taken steps for his own protection, etc., without regard to whether such carelessness was endangering the occupants of the car; and that it required Wilson to take certain steps for his own protection merely because the driver of the automobile in which he was riding was careless without regard to whether such carelessness was reflected in the driving of the automobile or was connected in any way with the method of operating the automobile; and that it injected into the case a contention not supported by the pleadings or the evidence, in that Georgia Vitrified Brick & Clay Company made no contention that Wilson had the opportunity to alight or did alight from the automobile and voluntarily re-entered it knowing that Cheek was careless.

The movant further contended that there is no duty on the part of a guest to take any action for his own protection until it is "palpably apparent" that the driver is careless, reckless, or incompetent and is thereby endangering the occupants of the car by his manner of driving; and, finally, that mere intoxication on the part of the driver or carelessness or incompetence would not amount to negligence unless, because of such factors, the driver failed to drive his car in a proper manner.

We have carefully considered these contentions, and do not find that the charge is subject to the criticisms made by the movant. In the first place, while it may not have been so stated, it *is* the duty of a guest riding in an automobile to take such steps as an ordinarily prudent person would take under the same or similar circumstances when the host *is careless* in the operation of the automobile. Just what steps he should take, of course, depends upon just how careless the host is. The guest must exercise ordinary care for his own protection at all times, and the standard of ordinary care that he must exercise is the care that an ordinarily prudent man under the same or similar circumstances would exercise. His duty to take some affirmative action, however, does not arise until he has notice that the host is negligent. In other words, the guest's duty to avoid the negligence of the host does not arise until such negligence becomes known to him, but his duty to exercise ordinary care in discovering the negligence of the host is a continuing one. The guest cannot simply close his eyes to known or obvious dangers,

however; and, though the phrase "palpably apparent" has been used by this court in connection with the duty of the guest to act when the negligence of the host becomes "palpably apparent," the duty of the guest is not so limited. See *Mann* v. *Harmon*, 62 *Ga. App.* 231 (8 S. E. 2d, 549).

Counsel for the plaintiff in error argue in their brief before this court that it is erroneous to instruct the jury what acts amount to negligence unless made so by statute. This point is nowhere raised in connection with this charge in the motion for new trial, and cannot, therefore, be considered by this court. *Edenfield* v. *State*, 26 *Ga. App.* 206 (4a) (105 S. E. 732) ; *Osborne* v. *State*, 27 *Ga. App.* 271 (2) (108 S. E. 81).

4. The 6th and 20th special grounds of the motion for new trial assign error on the same portion of the charge to the jury, as follows: "If you should find from the evidence that the deceased, J. J. Cheek, was grossly negligent in certain particulars, and that the defendant Georgia Vitrified Brick & Clay Company was negligent in certain particulars, and that the deceased R. E. Wilson was negligent in certain particulars, and if you should further find that the negligence of the said R. E. Wilson was equal to or greater than the negligence of the defendant Georgia Vitrified Brick & Clay Company your verdict should be in favor of the defendant Georgia Vitrified Brick & Clay Company, even though you should find that the negligence, if any, of said Georgia Vitrified Brick & Clay Company concurred in and contributed with the negligence of the said J. J. Cheek, causing the death of the said R. E. Wilson." The 9th special ground assigns error because the trial court instructed the jury: "If the defendant company and the deceased were equally at fault, there would be no recovery."

The first excerpt from the charge is criticized as being an inaccurate statement of the law, in that the plaintiff was entitled to recover against the defendants even though his father's negligence may have been greater than the negligence of either one of the defendants, so long as his father's negligence was not greater than the combined negligence of both defendants, and in that it relieved Georgia Vitrified Brick & Clay Company from any liability for the negligence of Cheek although the negligence of both defendants concurred to produce the injury.

These grounds of the motion for new trial are without merit. The exact proposition first contended by the plaintiff in error was raised in *Mishoe* v. *Davis,* 64 *Ga. App.* 700, 708 (19) (14 S. E. 2d, 187). In that case, Judge Felton, speaking for this court in passing upon a charge excepted to, and in answering the contentions there made said: "The contention is that when two joint tort-feasors are charged with concurring negligence contributing to an injury the plaintiff would be entitled to a judgment against both tort-feasors in spite of the fact that the plaintiff was guilty of more negligence than one of the defendant tort-feasors. We do not think this is the law. No plaintiff is entitled to a judgment against a tort-feasor to whose negligence plaintiff's negligence is equal." The rule thus announced was restated and applied in *Smith* v. *American Oil Co.,* 77 *Ga. App.* 463, 500 (2e) (49 S. E. 2d, 90). As a necessary corollary to the above-stated principle, it follows that the fact that the charge relieved Georgia Vitrified Brick & Clay Company from any liability for the negligence of Cheek is no valid criticism of the charge. "For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent." Code, § 105-205. The contention made in this regard is tantamount to contending that the negligence of Cheek should be imputed to Georgia Vitrified Brick & Clay Company. There was no evidence and no contention that the relationship of principal and agent existed between them, and for this additional reason this contention is without merit.

The plaintiff in error further contends that the first charge was erroneous because there was no factual situation by which the negligence of Wilson could be compared with that of the defendant company, because the negligence alleged against the defendant company consisted of operating its truck on the left side of the road, while the only negligence which could be attributed to the plaintiff's father was his failure to exercise ordinary care in riding with Cheek. This contention is without merit.

The complaint that the charge did not instruct the jury that, should they find the negligence of Wilson to have been less than

that of the company, they should reduce the amount of damages awarded in proportion to the negligence attributable to each, and that the charge did not instruct the jury to compare the negligence of Wilson with that of Cheek is without merit. A charge which is otherwise correct is not rendered incorrect or erroneous by the failure of the court to charge in connection therewith some other principle of law. See the numerous cases cited under the catchword, "Omission," in Code (Ann.), § 70-207. Furthermore, these grounds of the motion cannot in any view of them be interpreted as an exception to the failure of the court without request to charge a necessary legal proposition.

The contentions, that the second portion of the charge complained of in ground nine took from the jury the right to decide whether or not the defendant company's negligence concurred with the negligence of Cheek in causing the collision, and that it was error because the plaintiff was entitled to recover if his father's negligence was less than the entire quantum of negligence of the two defendants, are without merit, and such contentions are sufficiently answered by what has been written above.

Special ground 23 complains because the court failed to charge the jury in the substantial language of the charge complained of in grounds 6 and 20, but with respect to comparing Wilson's negligence with that of Cheek. The failure to charge in that respect could not have been harmful to the plaintiff in error, since such a charge would necessarily have been adverse to him. A party cannot complain of a favorable charge or that the charge was more favorable to him than it might have been, and cannot be heard to complain because the trial judge failed to charge in a particular which if given would have been adverse to his interest.

5. The court charged the jury: "The defendant has set up in its answer an affirmative defense charging the driver of the automobile was running 80 miles per hour, also that he was intoxicated. Under the circumstances a duty rests upon the deceased Wilson to avoid the consequences of the driver's negligence, if you believe there was any. Where the said Wilson, the deceased, knew of the negligence or, by the exercise of ordinary care, could have discovered it and his failure to do so

was the direct and proximate cause of his death, no recovery could be had."

This instruction is excepted to in special ground 7, because, it is contended, the language of the charge instructed the jury that from the pleadings alone, without regard to whether there was any evidence or proof, a duty rested on the plaintiff's father to avoid the consequences of Cheek's negligence; that this is an inaccurate statement because no duty rested on Wilson because of contentions made in the pleadings; and that the charge had the effect of raising the status of the pleadings of the defendants and giving the effect of pleadings supported by the evidence.

We do not think that this portion of the charge was susceptible of being so understood by the jury. The court elsewhere in the charge instructed the jury that the pleadings were not evidence; that what is the proximate cause of the injury is a question for the jury to determine from the evidence; that, outside of statutory negligence as defined in the charge, what is required of a person in the exercise of ordinary care is a question for the jury to determine; and "that a plea of contributory negligence is an affirmative defense, and therefore, in order to excuse one's self under such plea, the one making such an affirmative defense must satisfy the jury by a preponderance of the evidence on that issue that the negligence of the deceased contributed to his injury and death." When considered in connection with other pertinent portions of the charge, the portion complained of was not subject to the criticisms made, and the trial court did not err in overruling the 7th special ground.

6. Special ground 10 of the motion complains because the court instructed the jury with respect to contributory negligence on the part of Wilson, and further instructed the jury that, if such contributory negligence could have been avoided by the defendants by the exercise of ordinary care, it would not be such contributory negligence as would bar a recovery by the plaintiff. It is contended that this charge had the effect of raising the plaintiff's father to the status of an active participator in the acts leading up to the collision, injury, and death and thus injected into the case a new issue not made by the pleadings or the evidence. While this charge may not have been

strictly accurate or adjusted to the issues in the case, it was, if erroneous, harmful to the defendants rather than to the plaintiff, and for this reason the plaintiff cannot now be heard to complain about it. The overruling of this ground was not error.

7. Special ground 11 complains of another portion of the charge relating to contributory negligence. Without going to the length here to set forth the charge, we may say that it is not an inaccurate statement of the law, and is not error for any of the reasons assigned. Furthermore, counsel for the plaintiff in error in their brief argue this ground merely by quoting the ground of the motion for new trial, and nowhere do they even generally insist that the trial court erred in overruling this particular ground. We are not disposed to consider this to be an argument of this ground of the motion, such as would justify further consideration by this court.

8. Special ground 12 complains of the following charge: "If the guest, Mr. Wilson, the deceased, had the right or was under the duty to control or influence the driver's conduct, any negligence of the driver which contributed to causing the collision would be imputable in law to said deceased Wilson, and the deceased would be responsible for such conduct of the driver. Unless said Wilson, the deceased, had some such right or was under some such duty, the negligence of the driver, if any, would not be imputable to the deceased Wilson and he would not be responsible therefor."

This language is not subject to the criticism that the use of the phrase, "right or duty to control or influence the driver's conduct," was erroneous because the court did not, in immediate connection therewith, charge that such right or duty to control or influence the driver's conduct must be the right or duty to influence his conduct in the operation of the automobile. Nor is the charge subject to the objection that it was not authorized by the pleadings or the evidence, in that there was no contention that Wilson was anything other than a guest of Cheek. However, the court elsewhere in its charge instructed the jury that "A person riding in the car of another is not chargeable with the negligence of the driver of the car unless under the express or necessarily implied terms of the prearrangement of the persons or by their conduct each has an equal right of

control over the route, time and manner of operating the automobile. . . Any negligence of the driver of the car in which plaintiff's father was riding, if you find there was such negligence, can not be chargeable to the father of the plaintiff, if you should find that the father of the plaintiff had no right to control the operation of the automobile in which he was riding, even though the purpose of the trip was jointly beneficial to such deceased father and the driver of the car in which he was riding." This instruction was in substance the same as the one excepted to in the 12th ground of the motion, and was nowhere excepted to by the plaintiff. The trial court did not err in overruling this ground.

9. Grounds 13 and 14 complain of portions of the charge on imputable negligence which, when imputed to the plaintiff, would amount to a lack of ordinary care, as being inaccurate in that it failed here or elsewhere to correctly instruct the jury on the same proposition as to conduct of the defendants amounting to gross negligence, or conscious indifference to consequences. It is conceded that the charges as given are correct when applied to a situation where the defendants' negligence was merely gross, but it is contended that, if the jury found that the defendants' conduct amounted to wanton and wilful conduct, the charge did not go far enough.

Nowhere in the petition was it alleged that the conduct of the defendants amounted to wilfulness and wantonness. However, conceding but not deciding that the evidence may have authorized a charge in this regard, and that it would have been the duty of the trial court upon the presentation of a proper written request so to charge, this ground of the motion was without merit, since a charge that is otherwise legally correct, applicable, and pertinent to the issues in the case is not rendered erroneous by the failure of the court to charge another pertinent legal principle. See the numerous cases cited under the catchword, "Omission," in Code (Ann.), § 70-207. The trial court did not err in overruling these grounds of the motion.

A portion of the charge complained of in ground 13 is also attacked in special ground 26 of the motion, as being not adjusted to the pleadings or the evidence, and because it confused the rule of law that the negligence of the driver of an automo-

bile is imputable to another occupant of the automobile under certain instances, but not where the relationship of guest and host is established. The charge was not erroneous for either of these reasons. The evidence is not conclusive that the relationship between Wilson and Cheek was that of guest and host. The jury would have been authorized to find that there was a relation other than this, and that Wilson and Cheek were engaged in a joint venture which gave to Wilson, if he did not exercise it, the right to control the manner of the operation of the automobile. The trial court did not err, therefore, in overruling special ground 26 of the motion for new trial.

10. Special ground 15 complains of a portion of the charge as expressing an opinion of the court that the defendants should prevail, as being argumentative, as not being in accordance with any contention of the parties, and as authorizing the jury to find for the defendants if they should find that the defendant company was not negligent, without regard to whether the defendant Harrell's intestate, Cheek, was negligent in any of the ways contended by the plaintiff. The record in this case shows that, after the trial court had completed its instructions to the jury and the jury had retired to consider their verdict, they were recalled and two recharges given. One of those recharges expressly corrected and withdrew the portion of the charge complained of in this ground as being erroneous and harmful, and the record shows that counsel for the plaintiff, as well as counsel for the defendants, orally agreed to the correctness of that recharge. Under the circumstances, this ground of the motion shows no harmful error. The trial court did not err in overruling the 15th special ground of the motion for new trial.

11. Special ground 16 assigns error on the entire charge of the court as being argumentative and unduly stressing the contentions of the defendants over those of the plaintiff, in that the judge charged as to the contentions of the plaintiff on only 7 separate occasions, whereas he charged as to the contentions of the defendants on 24 separate occasions. The 21st special ground assigns error on 18 separate portions of the charge as unduly emphasizing the contentions of the defendants and portions of the evidence favorable to the defendants' contentions, and that they unduly emphasized the legal proposition in one

form or another that, if the plaintiff was not in the exercise of ordinary care for his own safety, he could not recover, or, if by the exercise of ordinary care the plaintiff could have avoided the consequences to himself of the negligence of the defendant, he could not recover.

The contention of the plaintiff, as 'we understand it, is not that the contentions of the defendants were merely stated more fully than the contentions of the plaintiff, but that the law with respect to those contentions, and particularly with respect to the duty of the plaintiff's father to exercise ordinary care in discovering and avoiding the negligence of the defendants, his duty as a guest riding in Cheek's automobile to take such steps as an ordinarily prudent person under the same or similar circumstances would have taken, the effect of contributory negligence on the plaintiff's case, and similar propositions, were charged with such repetition and frequency and in so many and varied ways as to amount to an argument, and as to be calculated to impress the jury that the court felt that the plaintiff should not prevail. After carefully reading the charge, we think that it is subject to the criticism made. The better part of 10 full pages of the 25-page charge is consumed in reporting the court's charge with respect to those propositions, and in several isolated places on other pages the court charged such propositions as *when negligence may be imputed to a guest, that the plaintiff could not recover if he could have avoided the negligence of the defendants by ordinary care,* and that, *if the defendant brick company's truck was on its right side of the road, you need go no further, but find for the defendant,* etc.

To be sure, many of the charges embodied in what we are holding constituted argument are excepted to in other grounds of the motion, and we are holding such charges not to be erroneous as abstract propositions of law or in their particular application to the facts of the case, or when viewed alone. But, when the entire charge is considered as a whole, while the individual parts thereof may not constitute error, we are constrained to hold that it was argumentative and calculated to impress the jury with the view of the trial judge that the plaintiff should not prevail. That the trial judge entertained this view at the time of the trial, or at least at the time he charged the jury, appears

from his order overruling the motion for a new trial, wherein he stated that, had a motion for a directed verdict been made by the defendants, he would probably have granted it. The court erred in overruling special grounds 16 and 21 of the motion. *Macon Ry. & Light Co.* v. *Vining*, 123 *Ga.* 770, 772 (3) (51 S. E. 719); *Wilson* v. *State*, 8 *Ga. App.* 816 (1) (70 S. E. 193).

12. The failure to instruct the jury as to the meaning of slight diligence, as complained of in the 17th special ground of the motion, was not error for any of the reasons assigned. The trial court charged that the plaintiff must prove gross negligence on the part of Cheek, the defendant Harrell's intestate, the driver of the automobile in which the plaintiff's father was riding, to entitle the plaintiff to recover. In the absence of a timely written request therefor, it was not error to fail to define the meaning of gross negligence or slight diligence. *Savannah Electric Co.* v. *Bennett*, 130 *Ga.* 597 (2) (61 S. E. 529); *Western Union Telegraph Co.* v. *Ford*, 10 *Ga. App.* 606 (5) (74 S. E. 70); *Hotel Equipment Co.* v. *Liddell*, 32 *Ga. App.* 590, 604 (3c) (124 S. E. 92); *City of Camilla* v. *May*, 70 *Ga. App.* 136, 140 (27 S. E. 2d, 777).

13. The court charged the jury in the language of the Code, § 3-505. Special ground 19 excepts to the charge of the first sentence of that Code section, which is as follows: "No action for a tort shall abate by the death of either party, where the wrongdoer received any benefit from the tort complained of." The ground of such exception is that this part of the charge was confusing and misleading to the jury, in that it was calculated to impress them with the idea that, in order for the plaintiff to be entitled to recover against Cheek's administrator, he must show that Cheek received some benefit from the wrongful homicide of the plaintiff's father. While the use of this language was probably inapt and not adjusted to either the pleadings or the evidence, we are not prepared to say that the charge of the entire Code section was reversible error. Inasmuch as the case is to be sent back for another trial, the trial court will, no doubt, be guided by this opinion and omit to charge in such language as is likely to mislead or confuse the jury as to the real issues to be tried by them.

14. It appears that one of the jurors impaneled to try the case was A. C. Pace. His wife, Mrs. Annie Pace, was the daughter of Ike Bowen, who was the son of Enoch Bowen. Enoch Bowen had another son, Jerry Bowen, whose daughter was a Mrs. Norman Wilcox, and Mrs. Wilcox's daughter was a Mrs. Charlie Cheek, the mother of J. J. Cheek. Special ground 22 of the motion for new trial complains of this relationship and the fact that the juror being so related sat on the jury trying the case. By affidavit attached to the motion as an exhibit, counsel for the plaintiff and the nominal plaintiff, Mrs. Maggie Moore, showed that they had no prior knowledge and no way of knowing of that relationship. The plaintiff, on the hearing of the motion for new trial, introduced in evidence before the trial judge the affidavits of Enoch Bowen, an uncle of Mrs. Pace and of A. H. Burnham Sr., showing the relationship between Mrs. Pace and J. J. Cheek. Insofar as the sufficiency of the showing of the plaintiff in error of lack of knowledge of the relationship between Mrs. Pace and Cheek on the part of Mrs. Moore and the plaintiff's counsel, and of due diligence on their part in discovering that relationship, it is sufficient to say that this showing was at least a prima facie one.

The defendant, by way of counter-showing introduced an affidavit of A. C. Pace, in which he stated that upon the trial of the case he did not recall or become aware of the relationship of his wife and J. J. Cheek. The defendants further showed by appropriate counter-affidavits of counsel that in fact the estate of J. J. Cheek was so impecunious that it stood to lose nothing whatsoever from a verdict against it, that this fact was called to the attention of the jury, and that the jury was aware of that fact, the contention being that the related juror would not have been averse to rendering a verdict against his relative's estate, knowing that it probably would never actually be called upon to satisfy the judgment since it had no funds from which such a judgment could be satisfied. The defendants further showed that one of the plaintiff's attorneys of record was acquainted with A. C. Pace, the inference apparently being that this attorney, being acquainted with the related juror should have also had knowledge of the relationship between his wife and Cheek. We do not think that this latter showing was suffi-

cient to refute or discredit the evidence of lack of prior knowledge of the fact raised by the affidavits introduced by the plaintiff.

That the relationship between the juror and J. J. Cheek was within the sixth degree by affinity as reckoned by the civil law is beyond doubt. *Smith* v. *State*, 2 *Ga. App.* 574, 576 (59 S. E. 311); *Smith* v. *State*, 62 *Ga. App.* 494 (8 S. E. 2d, 663). But the defendant company contends that the fact that Pace made the affidavit showing that he had no present knowledge of the relationship between his wife and Cheek when he sat on the jury and participated in rendering the verdict rendered his sitting on the jury harmless and no cause for a new trial, and further that the fact that Cheek's estate apparently stood to lose nothing by reason of any adverse verdict and judgment, and that the jury knew this, rendered the fact of this relationship harmless to the plaintiff, and finally that, even if the fact of this relationship between Pace and Cheek be cause for reversal as between the plaintiff and the administrator of Cheek's estate, it would not be as to Georgia Vitrified Brick & Clay Company.

The first of these contentions made by counsel for the defendant company has been answered adversely to it by this court. In *Ferguson* v. *Bank of Dawson*, 53 *Ga. App.* 309 (1), 311 (185 S. E. 602), it was held: "Where the disqualification of the juror because of interest, etc., is shown to be true without dispute, and the same was not known to movant or his counsel until after the verdict and they could not have discovered the same by the exercise of due diligence, it is error for the court to refuse a new trial. *Perrett* v. *State*, 16 *Ga. App.* 587 (85 S. E. 820); *Edwards* v. *State*, 174 *Ga.* 632 (163 S. E. 157); *Georgia R.* v. *Hart*, 60 *Ga.* 550; *Bullard* v. *Trice*, 63 *Ga.* 165; *Bank* v. *Tuck*, 107 *Ga.* 211 (33 S. E. 70); *Groover* v. *Simmons*, 152 *Ga.* 423 (110 S. E. 179); *Brooke* v. *Pickett*, 21 *Ga. App.* 422 (94 S. E. 601). This is so even though the juror filed an affidavit that he was not prejudiced on that account. *Swift* v. *Mott*, 92 *Ga.* 448 (17 S. E. 631). 'It is contrary to public policy to allow a juror, after participating in the making of a verdict, to assert ignorance of any fact which rendered him incompetent to serve.' *Bank* v. *Tuck*, supra. The fact that the juror was ignorant of his disqualification at the time of the trial, and so swears, makes

no difference. *Young* v. *Cochran Banking Co.*, 166 *Ga.* 877 (144 S. E. 652); *Keener* v. *Headrick,* 170 *Ga.* 242 (152 S. E. 254). A new trial is demanded where there is no doubt as to the disqualification or incompetency of the juror, and where such disqualification has not been waived by knowledge thereof; for the reason that the verdict is illegal and void. *Hubbard* v. *State,* 5 *Ga. App.* 599 (63 S. E. 588); *Ga. R.* v. *Cole,* 73 *Ga.* 713." In view of the foregoing ruling, the affidavit of Pace was not sufficient to show that the error in permitting a juror within the prohibited degree of relationship to the prevailing party was harmless.

As was said by Judge Russell in *Temples* v. *Central of Ga. Ry. Co.,* 15 *Ga. App.* 115 (1), 119, 120 (82 S. E. 777), "Running through the entire fabric of our Georgia ·decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. . . In determining the scope of those rulings of the Supreme Court in which it was held that jurors should be above every exception, it seems to us that great importance is to be attached to the ruling, several times made, that the juror should be free from the suspicion of bias. The use of this language would certainly seem to import that the general rule is to be liberally construed, so as to include any reasonable probability that no party will be deprived of the right of trial by an impartial jury, and not that the jury should be held to be impartial merely because, forsooth, the objection to the juror does not come strictly within the rulings in some of the adjudicated cases, or because the facts upon the issue submitted are not identical with those with which some of the adjudicated cases dealt. As we see it, the cardinal underlying principle in every adjudication in Georgia in which a juror has been held to be incompetent is that upon the discovery of facts which, without dispute, or in the court's judgment if there is conflict in the evidence, evince good reason for interest or bias in the case, the court will take judicial knowledge of the fact that in all human probability the influence disclosed would operate upon the juror and move him to act in accord therewith. It will not do to say that a juror who is related to a party is held to be incompetent merely

because of the now well-settled rule upon that subject, for there was originally a reason for the rule, a reason equally applicable in dissimilar situations if the court judicially knows that the effect upon the juror's conduct will be the same as if he were related. The rule disqualifying near relatives is now so ancient (having been well settled in the common law) that we are apt to overlook the principle upon which the rule is based. The rule was no doubt crystallized by long usage, and, insofar as it is presumptive, has a history in common with many other presumptions of law, which after serving a long apprenticeship in the jury-box, finally mounted the bench. *Kinnebrew* v. *State*, 80 *Ga.* 239 (5 S. E. 56). A near relative is not disqualified from sitting as a juror because of any proof that he will not render a just verdict, and yet (except as to limitation in degree of relationship) the rule is not purely arbitrary. The first judge who ever decided that relationship was a disqualification worked out the problem thus: Given a litigant and a juror, who are close kin; upon the general experience and observation of which the court itself has knowledge I adjudge, as a matter of law, that it is so improbable that this kinsman, if he is permitted to be a juror, will decide against his relative that I am compelled to decide that he is not a competent juror.

"None of the rules under which jurors are held to be incompetent propter affectum appear to be statutory. All of them, either directly or remotely, rest upon the proposition that after interest or bias on the part of the juror is shown, whether that interest be direct or indirect, the court will take judicial knowledge of the fact that in all human probability the juror will act in accordance with his interest or bias. When, according to universal human experience, the inherent probabilities of the circumstances by which the juror is environed and to the influence of which he is to be subjected, compel the conclusion, in accord with the court's judicial knowledge, that the juror will naturally be affected by his interest, it can not be held, as a matter of law, that the juror will contribute to, or is qualified to sit in, an impartial trial as guaranteed by the Constitution, certainly not if the requirement that jurors be omni exceptione majores extends to debar jurors when there is a suspicion or ground for suspicion, as has several times been held by the

Supreme Court. In the interest of fair trial, if error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors, rather than in a too-technical observance of the letter of cases previously adjudicated and an attempt to bring the facts of other cases within some particular ruling."

Keeping in mind the foregoing broad general principles, we think that they may well serve as a broad general guide in determining the question before us. While it appeared at the time of the trial that Cheek's estate was worth only $100 and would not be liable to respond in damages or even pay costs if the verdict and judgment went against it, it is by no means clear that other assets may not at some future time come into the hands of the administrator, the defendant Harrell. A juror affected with bias in favor of the estate because of his relationship to Cheek may well have felt that to saddle the estate with a judgment or even potential liability of being called upon to respond in the payment of damages, should some funds at some time in the future come into the hands of the administrator, would be too much of a burden to hang over the head of the widow and children of Cheek, and such a juror may well have contrived to prevent a verdict from being rendered because of just that feeling. Then another factor that occurs to us is that, through sympathy for a grieving widow, he may well have felt that to place the stamp of blame for the injury and death of Wilson upon Cheek by rendering a judgment against him would have been an act he was unwilling to be a party to, and for this reason he may have taken the same view in the matter and resisted rendering a verdict against Cheek's estate. These are just two suggestions why an incompetent juror should not be allowed to serve and why a verdict rendered by him is an illegal one which should not be permitted to stand. As stated in the cases quoted, it is not the fact of actual pecuniary interest or proved bias on the part of the juror, but the mere suspicion of interest or bias that disqualifies. For these reasons we cannot say that the fact that the estate of Cheek was without funds to respond in damages at the time of the trial rendered a verdict found by an incompetent juror any less harmful that otherwise.

Furthermore, under the peculiar facts of this case a reversal of the case as to Harrell alone will not cure the harm for, if

the verdict for him was rendered as a result of these factors, the verdict for the defendant company was necessarily infected with the same vice, since, under proper instructions given the jury by the trial judge, a rendition of a verdict for Harrell would, for whatever reason it was rendered, necessitate a verdict for the company defendant. For these reasons the trial court erred in overruling the 22nd special ground of the motion for new trial, and this error requires a reversal of the judgment.

15. Complaint is made in special grounds 22A and 24 of the admission of testimony of non-expert witnesses, who did not see the collision, as to their conclusion that it occurred on the truck's right-hand side of the highway. These grounds of the motion are without merit for the reason that· at least two other witnesses who were not qualified as experts and who were not eye-witnesses to the collision were permitted to testify without objection to substantially the same facts and draw the same conclusion. See *Sikes* v. *Wilson*, 74 *Ga. App.* 415, 418 (2) (39 S. E. 2d, 902).

16. Special ground 25 complains of a portion of the charge, as follows: "I charge you that if the guest in the automobile knew or, in the exercise of ordinary care, should have known that his host, the driver, was incompetent or careless, driving at a reckless and dangerous rate of speed, it is his duty to notify the driver of the peril, and after warning the driver of such carelessness and recklessness it may devolve upon him to insist that the driver shall stop the vehicle and allow him to alight, or take some other suitable action for his own protection."

This language was not subject to any of the criticisms made in this ground of the motion for new trial, and did not amount to an instruction to the jury as to what facts would or would not constitute negligence on the part of the plaintiff. Substantially this same charge was requested by the defendant in *Mann* v. *Harmon*, 62 *Ga. App.* 231, 232 (8 S. E. 2d, 549), and it was there held that the trial court erred in refusing to give the requested charge where the jury would have been authorized to find that the defendant was intoxicated and that the guest failed to take appropriate steps for his own safety. That case is controlling against the contentions made by the plaintiff in error here, and the trial court did not err in instructing the jury

as complained of in the 25th special ground of the motion for new trial. If there is anything to the contrary in *Hawkins* v. *Benton Rapid Express*, 82 *Ga. App.* 819, 826 (62 S. E. 2d, 612), it must yield to the older ruling by which we are bound.

17. Special grounds 3, 4, 8, and 18 of the motion for new trial have been expressly abandoned by counsel for the plaintiff in error and are, therefore, not considered. The general grounds likewise are not considered, since the evidence on another trial may not be the same. We deem it appropriate to say, however, that the contention of the defendant in error that the evidence demanded a verdict for the defendants, and that any technical error in the charge or in the admission of evidence was necessarily harmless, is without merit. There was some evidence for the plaintiff, which we do not deem incredible as a matter of law, that the defendant Georgia Vitrified Brick & Clay Company's truck was over the center line of the highway, and coupled therewith was evidence that the driver of the automobile in which the plaintiff's father was riding as a passenger had been operating the same in an entirely safe and normal manner and not in such a way as to put his guests on notice that anything was wrong or that they should take any precaution for their own safety. To be sure there was evidence of intoxication on the part of the driver of the automobile, but this was controverted in a rather substantial manner by several of the witnesses for the plaintiff. The question of which of these two sides of the issue was to be believed was exclusively for the jury, and this court cannot say that the verdict for the defendants was demanded as a matter of law.

*Judgment reversed. Sutton, C. J., and Felton, J., concur.*