42540. UNITED STATES FIDELITY & GUARANTY COMPANY et al. v. EVANS.

ARGUED JANUARY 4, 1967—DECIDED JUNE 6, 1967— REHEARING DENIED JUNE 30, 1967—

*Henry A. Stewart, Sr.*, for appellants.

*James I. Parker*, for appellee.

HALL, Judge. 1. There is no requirement that before bringing this kind of action the insured must have paid off the judgment. Smoot v. State Farm Mut. Auto. Ins. Co., 299 F2d 525. The allegations were sufficient to withstand the general demurrers. See *Cotton States Mut. Ins. Co. v. Phillips*, 112 Ga. App. 600 (145 SE2d 643); *Cotton States Mut. Ins. Co. v. Phillips*, 110 Ga. App. 581, 583 (2) (139 SE2d 412); *Cotton States Mut. Ins. Co. v. Fields*, 106 Ga. App. 740 (128 SE2d 358).

2. The only question remaining is whether the jury was authorized by the evidence to find that the insurer violated any duty to the insured in failing or refusing to accept the offers of settlement.

The insurer takes the position that this is a suit in contract and that decisions of this court (cited in dissent) relating to the penalty provisions of our Insurance Code (formerly § 56-706, now 56-1206) control the present case. We disagree. The penalty provisions of the Insurance Code are inapplicable and provide no measure of recovery; the insured's suit is not upon the contract but rather in tort and naturally involves a duty and an alleged breach of that duty. *Cotton States Mut. Ins. Co. v. Phillips*, 110 Ga. App. 581, supra, certiorari denied, 110 Ga. App. 895; Smoot v. State Farm Mut. Auto. Ins. Co., 299 F2d 525, supra.

What then is the duty? Many jurisdictions "have coupled in their discussions the terms 'bad faith' and 'negligence', seeming to use them as disjunctive or alternative tests. [See *Francis v. Newton*, 75 Ga. App. 341 (43 SE2d 282)]. It is partly on this account—also partly because the same states will occasionally refer to one test and upon other occasions to the other—that the conclusion must be drawn that mere terminology means little. It is rather the factual situation which is significant in the light of the duty which exists, and normally the trier of fact must make the determination of liability or nonliability." 7A Appleman, Insurance Law and Practice 576, § 4712.

The standard suggested by a noted legal scholar is: "With respect to the decision whether to settle or try the case, the

insurer, acting through its representatives, must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle if, but only if, such ordinarily prudent insurer would consider that choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk—that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results." Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1147.

We will assume without deciding that the insurer did not act arbitrarily or capriciously in refusing the settlement prior to verdict. We turn therefore to a consideration of the insurer's refusal to settle within the policy limits after verdict and prior to the appeal.

The insurer contends that as a matter of law there could be no lack of "good faith" unless the appeal was frivolous. We disagree. "It is not sufficient for the insurer to consult its own self-interest. As a professional in the defense of suits, it must use a degree of skill commensurate with such professional standards. As the champion of the insured, it must consider as paramount his interests, rather than its own, and may not gamble with his funds. Its relationship is somewhat of a fiduciary one, and the liability is greater than indicated by some of the earlier holdings. Thus, if the insurer refuses to settle a claim because it believes that the insured is not liable, it is nevertheless answerable for such refusal if its belief was arbitrary or capricious." 7A Appleman, Insurance Law and Practice 553, § 4711; Hart v. Republic Mut. Ins. Co., 152 Ohio St. 185 (87 NE2d 347); Critz v. Farmers Ins. Group, 41 Cal. Rptr. 401 (230 CalApp2d 788).

"We think it clear that an even greater duty rests upon the company after a verdict in excess of the policy limitation has been returned and an offer of settlement within the policy is made. Under such circumstances an appeal, if successful, can be of benefit only to the insurance company. It alone can profit from a reversal. All [the insured] would get would be

another law suit with a further possibility of an excess judgment against him. But because the company is not required to renounce completely its own interest in the litigation these facts in themselves are not sufficient to convict it of bad faith in taking an appeal. We believe that where the company is the only one that can profit from a successful appeal, which if successful would however subject its insured to the hazards of another trial, the facts for reversal must be very strong. Under such conditions the chances of success must be correspondingly greater than the chances of failure. Not only must the circumstances be such as to point strongly to a reversal but more important they must be such that there is a great possibility that upon a second trial in any event a judgment will not be returned in excess of the coverage of the policy." Hazelrigg v. American Fidelity & Casualty Co., 241 F2d 871; Hart v. Republic Mut. Ins. Co., 152 Ohio St. 185, supra; Knudsen v. Hartford Accident & Indemnity Co., 26 Conn. Sup. 325 (222 A2d 811); Southern Farm Bureau Cas. Ins. Co. v. Parker, 232 Ark. 841 (341 SW2d 36); Bennett v. Conrady, 180 Kan. 485 (305 P2d 823); Dumas v. Hartford Acci. & Indem. Co., 94 N. H. 484 (56 A2d 57); Jones v. Highway Ins. Underwriters (Tex. Civ. App.), 253 SW2d 1018. Accord Murach v. Mass. Bonding & Ins. Co., 339 Mass. 184 (158 NE2d 338). See also 15 Ark. Law Review 401, 411. This is the law for our neighbor to the east. Tyger River Pine Co. v. Maryland Cas. Co., 170 S.C. 286 (170 SE 346). It is also the law for our neighbor to the west. Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252 (73 S2d 524); Dalrymple v. Alabama Farm Bureau Mut. Ins. Co., 267 Ala. 416 (103 S2d 711).

We concede there are two extreme views on this question— one is as contended by the insurer that it has an *absolute right* to appeal with no duty to consider the insured's interest in rejecting a settlement (see cases cited in dissent); the other is that the insurer has an *absolute duty* to accept any offer to settle for an amount within the policy coverage. While either of these two extreme positions has the advantage of certainty and relative ease of application, we reject them both. "The *predominant majority rule* is that the insurer must accord the

interest of its insured the same faithful consideration it gives its own interest." Cowden v. Aetna Cas. &c. Co., 389 Pa. 459 (134 A2d 223) (1957). (Emphasis supplied.) While this rule will not be as simple to apply in differing circumstances as either of the above absolutes, we think it states the duty owed by any prudent insurer to refrain from taking an unreasonable risk on behalf of its insured, e. g., where the chances of unfavorable results for the insured on appeal are out of proportion to the chances of favorable results.

The basis of the insurer's refusal to settle after the original verdict and the basis of the insurer's determination, over the objection of its insured, to appeal the case to this court (*Evans v. Williams*, 111 Ga. App. 647, supra), was that the evidence showed as a matter of law, (1) that the defendant driver was not guilty of gross negligence, and (2) that the guest had assumed the risk of riding with her. We do not think either of these defenses presented this court with any novel point of law in the field of negligence. We agree that it was in the insurer's own self-interest to appeal the case. However, its duty was not so limited. It had also to give at least equal consideration to the interest of the insured. Hernandez v. Employers Mut. Liability Ins. Co. of Wis., 346 F2d 154; State Farm Mut. Auto. Ins. Co. v. Jackson, 346 F2d 484; Southern Farm Bureau Cas. Ins. Co. v. Mitchell, 312 F2d 485. We cannot hold as a matter of law that the evidence in the present case demands a finding that the insurer gave equal consideration to the interest of the insured. See Crisci v. Security Ins. Co. of New Haven, 58 Cal. Rptr. 13 (426 P2d 173).

*Judgment affirmed. Bell, P. J., Jordan, P. J., Pannell and Joslin, JJ., concur. Felton, C. J., Eberhardt, Deen and Quillian, JJ., dissent.*

Eberhardt, Judge, dissenting. I regret the failure of my efforts in persuading my brethren of the majority that their decision is a retreat from a principle long established in Anglo-Saxon law, embedded in our Constitution, and so necessary to affording a fair juridical system for all having causes to plead or defenses to make. It has heretofore been taken for granted but now may be lost by a gradual erosion when litigants come

whose cause or defense, though meritorious, is for some reason unappealing. If it is determined that one among us is not entitled to be heard in defending a charge we may be sure that it will spread to others.

".  .  . therefore never send to know
for whom the bell tolls; it tolls for thee."
—John Donne.

I am in agreement with the apparent conclusion of the majority that the privilege is not to be denied to one who, before verdict, in good faith declines to settle and offers a defense on the question of liability or as to the amount thereof. If the proffered defense makes a jury question, or would *authorize* a verdict for the defendant it can not be said to have been made in bad faith.[1]  *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 765 (12 SE 18); *Empire Life Ins. Co. v. Allen*, 141 Ga. 413 (81 SE 120); *Life Insurance Co. of Ga. v. Burke*, 219 Ga. 214, 219 (132 SE2d 737); *Businessmen's Assur. Co. of America v. Tilley*, 109 Ga. App. 529, 534 (3) (136 SE2d 514); *Life & Cas. Ins. Co. v. Freemon*, 80 Ga. App. 443 (56 SE2d 303); *Pearl Assur. Co. v. Nichols*, 73 Ga. App. 452 (37 SE2d 227); *Life & Cas. Ins. Co. v. Jordan*, 69 Ga. App. 287, 293 (1b) (25 SE2d 103); *Gulf Life Ins. Co. v. Lewis*, 57 Ga. App. 249 (195 SE 208).

This is, of course, a suit in tort—not in contract. *Cotton States Mut. Ins. Co. v. Phillips*, 110 Ga. App. 581, supra, and compare *Leonard v. Firemen's Ins. Co. of Newark*, 100 Ga. App. 434 (111 SE2d 773). But the applicability of these cases, in

---

[1]It is to be noted that this action was brought in two counts, one charging negligence in failing to effect a settlement within the policy limits, and the other charging bad faith in failing and refusing to do so. The count grounded on negligence was voluntarily dismissed, and we have no occasion here to deal with that theory of the matter. Plaintiff's burden was to show *bad faith* on the part of his insurer. *Life Ins. Co. of Ga. v. Burke*, 219 Ga. 214, 219 (132 SE2d 737); *Interstate Life &c. Co. v. Williamson*, 220 Ga. 323, 326 (138 SE2d 668); *Life & Cas. Ins. Co. v. Freemon*, 80 Ga. App. 443 (c) (56 SE2d 303). "The doctrine that fraud or bad faith are never presumed, but must be proven, is directly applicable." *Maryland Cas. Co. v. Cook-O'Brien Const. Co.*, 69 F2d 462, 466.

the situation before us, insofar as they lay down the rule as to what constitutes bad faith or the lack thereof, is clearly demonstrated in Tennessee Farmers Mut. Ins. Co. v. Hammond, 43 Tenn. App. 62 (306 SW2d 13), where several of these cases are cited. Neither these cases nor *Code Ann.* § 56-1206, of course, supplies any measure of recovery in this situation and they are not cited for that.

But it is my conviction that the right to appeal must be afforded a litigant who has reasonable grounds therefor, affording a basis for expecting a reversal of the judgment, even though it may have declined an opportunity to settle within its policy limits a verdict that was substantially greater.

The Bill of Rights in our Constitution did not for a meaningless purpose include the provision that "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney or both." Constitution, Art. I, Sec. I, Par. IV (*Code Ann.* § 2-104). It was to keep the doors of our courts open to those who have causes to plead or defenses to make. Justice Bleckley expressed it in *Tift v. Towns*, 63 Ga. 237, 242: "No man is bound to forego litigation at the expense of yielding rights apparently well founded, much less those which prove to be so founded in the end. Where there is a *bona fide* controversy for the tribunals to settle, and the parties cannot adjust it amicably, there should be no burdening of one with the counsel fees of the other, unless there has been wanton or excessive indulgence in litigation." Justice Lamar, who later served on the Supreme Court of the United States, asserted in *Traders Insurance Co. v. Mann*, 118 Ga. 381, 386 (45 SE 426) that this provision in the Bill of Rights of our Constitution "is a privilege granted the defendant, as well as the plaintiff. . . Some defendants fail to pay because they are not able, others because they are not willing, and *many because they dispute the liability*." (Emphasis supplied). Accord: *Georgia R. & Bkg. Co. v. Gardner*, 118 Ga. 723, 726 (45 SE 600). Chief Judge Felton called attention to it in his dissent to *Georgia Cas. &c. Co. v. Reville*, 97 Ga. App. 888, 891 (104 SE2d 643), urging, inter alia, that "To affirm this judgment to me, is to deny a litigant his legal and con-

stitutional right. Regardless of the outcome of any particular case the gradual chiseling away of rights cannot but lead down the blind alley of loss of liberty. We cannot close our eyes to the legal principles announced by the courts of this and other States, on the rights of citizens and litigants where the question of liability is a close one." As was said in *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 815, supra, "Any rule or principle which would deny to the company the right of full and free litigation in such a case as this would deny it in any case."

The right of appeal, of course, is not a constitutional one. Indeed, none existed in this state until 1845. Due process does not require it. But when the right is afforded, equal protection requires uniformity of standards which are to be applied without discrimination. This is not achieved by the result here; there is an invidious discrimination.

Liability was certainly not clear in this case. The plaintiff, Williams, brought suit against his father-in-law and his mother-in-law to recover for damages alleged to have been suffered from personal injuries incurred when his mother-in-law was driving the automobile of her husband, and in which the plaintiff was riding at the time. It developed upon the trial that the plaintiff, who lived next door to the defendants, for some four or five months had been teaching his mother-in-law to drive the car. She testified that she was not familiar with the operation of the automobile and did not consider herself a good driver, and that although her son-in-law had been teaching her she did not feel that she had progressed much in learning. Thus it appeared that whatever ability she may have had in driving had been acquired from the instruction of the plaintiff, and he should have known of her ability, or lack thereof, to operate and control the car. The injury occurred on a Sunday afternoon when Mrs. Evans decided to go out for a drive. Her husband accompanied her, and she asked plaintiff, her instructor, to go along. The evidence was in conflict as to where plaintiff sat. Mrs. Evans testified that all three were on the front seat—she doing the driving, her husband in the middle and Williams to the right. Williams testified that he sat in the back seat.

When she came to an intersecting highway Mrs. Evans

stopped, looked in both directions, saw only one car approaching at a considerable distance to the left, and then turned to the left. However, she turned too much and was proceeding down the left traffic lane and after going a little way her husband suggested that she should get over to the right side of the road. She removed her foot from the gas pedal and started to apply the brake for slowing down, preparatory to making a turn to the right side of the road—but her foot slipped from the brake to the gas pedal, speeding the car instead of slowing it, and she became panic-stricken, pulled further to the left, off the highway, and ran into a tree.

Plaintiff charged gross negligence in his suit against Mr. and Mrs. Evans, which the defendants denied in their answer, and there was a defense of assumption of risk on the plaintiff's part. By their verdict the jury found against the defenses. But the insurer, on behalf of the defendants, believing that the evidence had fallen short of showing gross negligence and further that the defense of assumption of risk had been good, decided to appeal. A motion for new trial was filed, pending which there was an offer to settle for the face amount of the liability policy. Believing its defenses to have been good and that a reversal could be obtained on appeal, the offer was declined.

On appeal this court held that on the questions of gross negligence and of whether the plaintiff was in the exercise of ordinary care for his own safety, the verdict had been authorized. *Evans v. Williams*, 111 Ga. App. 647 (142 SE2d 424). The matter of assumption of risk on the part of the plaintiff in getting into the car and occupying a position where he could neither assist nor control his pupil's actions in handling it (whether on the outside of the front seat with the father-in-law between them or in the back seat), and knowing full well of her lack of ability to drive, was not dealt with in our opinion. For what reason, it does not appear. There was an affirmance, as a result of which the present action arose.

We have held it to be negligence knowingly to permit one's automobile to be driven by an untrained and unlicensed driver (*Medlock v. Barfield*, 90 Ga. App. 759 (84 SE2d 113); *Jones*

*v. Dixie Drive It Yourself System,* 97 Ga. App. 669 (104 SE2d 497)), or knowingly to entrust it to an incompetent driver. *NuGrape Bottling Co. v. Knott,* 47 Ga. App. 539 (171 SE 151); *Ficklen v. Heichelheim,* 49 Ga. App. 777 (6) (176 SE 540); *Crisp v. Wright,* 56 Ga. App. 338 (192 SE 390); *Graham v. Cleveland,* 58 Ga. App. 810, 815 (2) (200 SE 184); *Burks v. Green,* 85 Ga. App. 327 (69 SE2d 686); *Gay v. Healan,* 88 Ga. App. 533 (77 SE2d 47). And see *McKinney v. Burke,* 108 Ga. App. 501 (133 SE2d 383). If we employ logic in the decision-making process it must follow that it was reasonable for this insurer to take the position that when Williams got into the car with one whom he knew to be an incompetent driver, taking a position in the car where he could not assist if she got into trouble with her driving, he assumed the risk of whatever might happen because of her incompetency. It was reasonable to expect that this position might prevail in the trial court and, if not, that it might be established on appeal, particularly since we had not been called upon up to that time to pass upon the issue—nor did we do so when this case was appealed.

While the negligence of the host is not imputable to the guest (assuming, without deciding, that Williams was a guest of the Evans), the guest can not close his eyes to known or obvious dangers arising from the acts of the driver, or from the acts of others; he may not simply treat himself as "dead freight." If he has knowledge, or in the exercise of ordinary care should have it, of the driver's incompetency he is under a duty to take proper steps for his own protection, including insistence upon a stopping of the car for opportunity to alight. *Russell v. Bayne,* 45 Ga. App. 55, 56 (163 SE 290); *Eddleman v. Askew,* 50 Ga. App. 540 (179 SE 247); *Lazar v. Black & White Cab Co.,* 50 Ga. App. 567 (3) (179 SE 250); *Randall Bros. v. Duckett,* 53 Ga. App. 250, 254 (1) (185 SE 394); *Oast v. Mopper,* 58 Ga. App. 506 (199 SE 249). Failing in doing so, the guest is not in the exercise of ordinary care for his own safety, or he assumes the risk of the driver's incompetency. *Wilson v. Harrell,* 87 Ga. App. 793, 796 (3) (75 SE2d 436).

While the doctrine of assumption of risk is not itself a novel one, we have found no decision in the reports of the Supreme

Court or of this court in which it was presented under these facts and in this context. To that extent it was a novel matter, and in my judgment was a question of such substantial merit as to warrant the reasonable expectation of reversal on appeal.

Because success did not attend the appeal the majority now render a judgment having the effect of removing the contractual limits of liability under the policy of insurance. For a premium appropriate to a $10,000 liability the company must now pay in excess of $25,000.

It was the company's judgment and the judgment of its able counsel that liability had not been demonstrated by the facts proven on the trial, and that the verdict could probably be reversed on appeal. As it turns out their judgment was in error, but "It takes something more than mere mistake to constitute bad faith. . . It takes something more than error of judgment to create liability." Mendota Electric Co. v. New York Ind. Co., 175 Minn. 181 (221 NW 61). To the same effect, see 7A Appleman, Insurance, § 4712, p. 565 and Supp. p. 55. "While it may be in the light of what happened that Monday morning quarterbacks, as is their privilege and custom, disagree with the plays called on the previous Saturday afternoon, must we say that the signal caller was guilty of bad faith in choosing the plays as he did?" Ferris v. Employers Mut. Cas. Co., 255 Iowa 511 (122 NW2d 263).

" 'Lack of good faith' in settlement negotiations or in conduct of defense by insurer is the equivalent of 'bad faith,' and 'bad faith' embraces more than bad judgment or negligence and imports dishonest purpose, moral obliquity, conscious wrongdoing, breach of known duty through some ulterior motive or ill will partaking of the nature of fraud, and embraces actual intent to mislead or deceive another." 7A Appleman, Insurance § 4712 (Supp. p. 82). "A liability insurer's refusal of a settlement under the bona fide belief that the action might be defeated or the verdict kept within the policy limits, has been held not to constitute bad faith." 7A Appleman 567, § 4712. This rule was adopted in Auto. Mut. Ind. Co. v. Shaw, 134 Fla. 815 (184 S 852); Best Building Co. v. Employers' Liab. Assur. Corp., 247 NY 451 (160 NE 911, 71 ALR 1464); Henke v.

Iowa Home Mut. Cas. Co., 250 Iowa 1123 (97 NW2d 168);
City of Wakefield v. Globe Ind. Co., 246 Mich. 645 (225 NW
643), and many other jurisdictions cited in Appleman and in
an Annotation in 40 ALR2d 168. "We are of the opinion that
the insurance company could have validly declined the offer
of settlement if good faith existed on either of two grounds.
First, if it in good faith believed that the insured was not liable.
Second, even if liability of its insured was certain, if it believed
in good faith that a settlement at the proposed figure which it
was required to contribute was greater than the amount a jury
would award as damages." Boerger v. American Gen. Ins. Co.
of Minn., 257 Minn. 72 (100 NW2d 133). The rule has been
applied in situations where the seriousness of the claimant's
injuries was apparent and sufficient to justify an award above
the policy limits where the insurer had reasonable grounds for
defending and in good faith believed the insured not liable.
Olson v. Union Fire Ins. Co., 174 Neb. 375 (118 NW2d 318);
Maroney v. Allstate Ins. Co., 12 Wis. 2d 197 (107 NW2d 261).
And we have declared that "if there is any reasonable ground
for contesting the claim, there is no bad faith." *Pearl Assur.
Co. v. Nichols*, 73 Ga. App. 452, 455, supra. Accord: *Travelers
Ins. Co. v. Sheppard*, 85 Ga. 751, 765, supra; *Life Ins. Co. of
Ga. v. Burke*, 219 Ga. 214, 219, supra.

The majority must concede that under the rule in most of
the jurisdictions of this country no bad faith could be found
here, and consequently there would be no liability; but they pro-
ceeded upon a "trend" in the decisions of other courts, relying
upon language appearing in Hazelrigg v. American Fidelity &
Cas. Co., 241 F2d 871, supra, a case which arose in a federal
court of Oklahoma. In that case the appeal was upon the
grounds that the verdict had been excessive (even after the trial
court had ordered the verdict written down from $79,000 to
$60,000 to avoid the grant of a new trial) and because of some
inflammatory language used by plaintiff's counsel in his argu-
ment to the jury,—grounds which, under the rulings of our court,
are much less likely to bring a reversal than those on which
the appeal in this case was based. Indeed, they did not bring a
new trial, but the federal Court of Appeals held that reasonable

minds could not say that they were not reasonable grounds for appeal or that they were not such as might reasonably bring about a reversal. Though an affirmance of the damage action resulted on its appeal, in the subsequent action the company was held not accountable for the excess verdict. If the language relied upon is to be afforded a construction in keeping with the *result* of that case I should have no qualms here.

Hazelrigg is a federal case, as we have observed. But there are others holding to the contrary of the *dicta* which the majority relies on. "It seems safe to say that it would be an unwholesome rule which would permit a liability insurer to be convicted of bad faith for having failed to compromise a personal injury action, justifiably believed by it to be without merit, if the plaintiff in the action should obtain a verdict and judgment against the insurer in excess of its policy liability. Such a rule would virtually have the effect of giving an insured under a limited liability policy unlimited coverage." Frank B. Connet Lbr. Co. v. New Amsterdam Cas. Co., 236 F2d 117, 127. And see Maryland Cas. Co. v. Cook-O'Brien Constr. Co., 69 F2d 462, 466, supra. "The mere fact that this defense was unsuccessful . . . does not establish the fact that it was not made in good faith." Hall v. Preferred Acc. Ins. Co., 204 F2d 844, 848 (40 ALR2d 162).

It cannot be said that because the insurer decided to appeal, the interests of the insured were not given fair consideration. If there is reasonable basis for believing that freedom from liability can be established on the insured's part, that is certainly in his interest. It keeps his record clear and may well affect the rate of his future premiums. "[S]o long as it acts in good faith, considering the interests of the insured as well as its own interest, and not capriciously, an insurer cannot be required to settle a case rather than to litigate a doubtful issue, nor to bear the financial burden imposed on the insured if ultimate liability should exceed the policy limit." Farm Bureau Mut. Auto Ins. Co. v. Violano, 123 F2d 692, 696 (cert. den., 316 U. S. 672, 62 SC 1043, 86 LE 1747).

Reliance on the advice of counsel in declining the offer of settlement is not an act of bad faith. While it has been held

that the refusal to accept a compromise which the company's counsel *recommended for acceptance* is an indication—though not conclusive—of bad faith, e.g., see Henke v. Iowa Home Mut. Cas. Co., 250 Iowa 1123, supra, and City of Wakefield v. Globe Ind. Co., 246 Mich. 645, supra, certainly it must follow that if a company is to be penalized for *disregarding* the advice of its counsel, it should have credit for reliance on it. "[H]indsights are always better than foresights and . . . counsel placed in such a plight are not required to have the gift of prophecy." Southern Fire & Cas. Co. v. Norris, 35 Tenn. App. 657 (250 SW2d 785).

Nor do I agree that the question of whether there were grounds on which a reversal might reasonably be expected is for a jury. These raise questions of law, the gravity of which should be determined by the court; just as in the case of contracts carrying provisions in partial restraint of trade, where the court, and not the jury, must determine whether the restraint is reasonable. *Stein Steel & Supply Co. v. Tucker,* 219 Ga. 844, 846 (136 SE2d 355). Otherwise the appeal itself may as well be addressed to the jury, and we could abolish the appellate courts. By its ruling today the majority departs from the Anglo-Saxon tradition of having matters of law ruled on by the court, of fact by the jury, and leaves the appellant with no better than a Hobson's choice which leads to the Procrustean bed.

"[O]n the one hand, it is presumed that juries are the best judges of facts; it is, on the other hand, presumable that the court[s] are the best judges of law." Georgia v. Brailsford, 3 Dall. U. S. 1, 4 (1 LE 483). "The more logical conclusion, we think, and the one which history and the previous decisions here support, is that the [Seventh] Amendment was designed to preserve the basic institution of jury trial in only its most fundamental elements. . ." Galloway v. United States, 319 U. S. 372, 392 (63 SC 1077, 87 LE 1458). Cf. *Strange v. Strange,* 222 Ga. 44 (148 SE2d 494).

The true rule is or should be that "An insurer can not be said to be negligent for taking an appeal in the absence of evidence of bad faith or *that there was not a reasonable basis or ground for such an appeal.*" (Emphasis supplied). Chancey

v. New Amsterdam Cas. Co., (Tex. Civ. App.) 336 SW2d 763, 766. Accord: Davis v. Maryland Cas. Co., 16 La. App. 253 (133 S 769); Norwood v. Travelers Ins. Co., 204 Minn. 595 (284 NW 785, 131 ALR 1496). The insurer's control of the decision as to whether to settle the claim, after verdict, within the policy limits, does not require of the insurer such a high standard of duty as would compel the insurer to place the insured's interests above those of the insurer. Garcia & Diaz, Inc. v. Liberty Mut. Ins. Co., 147 NYS2d 306 (2).

There may be a trend away from constitutional moorings; the anchor may not hold. We may be lost in the churning waves of an uncharted sea. All may go down; but I am unwilling to let it be said that we did so because of a lack of even a compass.

I am authorized to state that Chief Judge Felton and Judges Deen and Quillian join in this dissent.